**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Joshua Otero, as Administrator of the Estate of Virgen Martinez** | : : : | **Civil Action** |
| | : | **NO: 22-4141** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **P/O Christian Kane, P/O Alexander Hernandez, City of Philadelphia and Tahir Ellison** | : : : | **JURY TRIAL DEMANDED** |
| | : | |
| **Defendants.** | : | |

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, the City of Philadelphia and Police Officers Christian Kane and Alexander Hernandez, by and through the undersigned counsel, hereby file this this Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56. In support of this Motion, Defendants incorporate the attached Memorandum of Law. Defendants respectfully request that this Court enter judgment in favor of Defendants.

Respectfully submitted,

*/s/ Derek Kane*
Derek Kane, No. 316941
Deputy City Solicitor
City of Philadelphia Law Dept.
1515 Arch St., 14th Floor
Philadelphia, PA 19102
derek.kane@phila.gov
*Attorney for Defendants P/O
Christian Kane, P/O Alexander
Hernandez and City of Philadelphia*

Date: March 1, 2024

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Joshua Otero, as Administrator of the Estate of Virgen Martinez** | : | Civil Action |
| | : | |
| | : | NO: 22-4141 |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **P/O Christian Kane, P/O Alexander Hernandez, City of Philadelphia and Tahir Ellison** | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| **Defendants.** | : | |

## <u>ORDER</u>

       **AND NOW**, this _____ day of _____, 2024, upon consideration of

Defendants' Motion for Partial Summary Judgment, it is **HEREBY ORDERED** that

Defendants' Motion is **GRANTED**.

BY THE COURT:

_____

**J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| **Joshua Otero, as Administrator of the** | : | **Civil Action** |
| **Estate of Virgen Martinez** | : | |
| | : | **NO: 22-4141** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **P/O Christian Kane, P/O Alexander** | : | **JURY TRIAL DEMANDED** |
| **Hernandez, City of Philadelphia and** | : | |
| **Tahir Ellison** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Derek Kane, No. 316941
Deputy City Solicitor
City of Philadelphia Law Dept.
1515 Arch St., 14th Floor
Philadelphia, PA 19102
derek.kane@phila.gov
*Attorney for Defendants P/O*
*Christian Kane, P/O Alexander*
*Hernandez and City of Philadelphia*

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION………………………………………….……………....1

II.     STATEMENT OF FACTS……………………………………………..3

III.    STANDARD OF REVIEW……………………………………………3

IV.     ARGUMENT…………………………………………………………...4

        A.      Plaintiff Cannot Prove a Fourteenth Amendment Claim…………………………4

                1.      High Speed Chases of Fleeing Traffic Suspects are Only
                        Unconstitutional When the Officer Exhibits an Intent to Harm
                        …………………………………………………………5

                2.      Plaintiff Cannot Show Officers Kane and Hernandez Intended
                        to Harm Defendant Ellison…………………………………9

        B.      Officer Kane and Officer Hernandez are Entitled to Qualified Immunity………11

        C.      Plaintiff cannot prove a State negligence claim against Officer Hernandez because
                he was not operating the police vehicle …………………………………13

        D.      Plaintiff cannot prove a Monell against the City of Philadelphia ………………14

                1.      There is No Record Evidence Supporting that Ms. Martinez's
                        Injuries Resulted from the PPD's Failure to Train its Police
                        Officers …………………………………………………...16

                2.      There is No Record Evidence Supporting that Ms. Martinez's
                        Injuries Resulted from the PPD's Failure to Supervise its
                        Police Officers …………………………………………20

V.      CONCLUSION……………………………………………....……....21

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Creighton*,
483 U.S. 635 (1987) ................................................................................................ 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986). ................................................................................................ 2

*Andrews v City of Phila.*,
895 F. 2d 1469 (3d Cir. 1990) ................................................................................ 14

*Artiles v. Vitanza*,
2009 WL 2426259 (D.N.J. Aug. 6, 2009) .............................................................. 20

*Ashcroft v. Al-Kidd*,
131 S. Ct. 2074 (2011) ............................................................................................ 11

*Ashley v. Kosehba*,
2023 WL 6200805 (M.D. Pa. Sept. 22, 2023) ........................................................ 19

*Balentine v. Chester Water Auth.*,
648 Pa. 105 (2018) .................................................................................................. 13

*Barkes v. First Corr. Med., Inc.*,
766 F.3d 307 (3d Cir. 2014) .................................................................................... 19

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*,
520 U.S. 397 (1997) ................................................................................................ 14

*Brown v. Muhlenberg Twp.*,
269 F.3d 205 (3d Cir. 2001) .................................................................................... 16

*Brown v. Pa. Dept. of Health Emergency Med. Servs. Training Inst.*,
318 F.3d 473 (3d Cir. 2003) .................................................................................... 15

*Burga v. City of Plainfield*,
2020 WL 2513507 (D.N.J. May 15, 2020) ................................................................ 6

*Carter v. City of Phila.*,
181 F.3d 339 (3d Cir. 1999) .................................................................................... 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................. 2, 3

*Chainey v. Street*,
523 F.3d 200 (3d Cir. 2008) ...................................................................................... 4

*City of Canton v. Harris*,
489 U.S. 378 (1989) ................................................................................... 15, 16, 19

*Cole v. Jenkins*,
2022 WL 2195451 (M.D. Pa. June 17, 2022) ........................................................... 6

*Connick v. Thompson*,
563 U.S. 51 (2011) ............................................................................................ 14, 15

*Cottman v. Farabella*,
2021 WL 2651036 (D.N.J. June 28, 2021) .............................................................. 18

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ........................................................................................ Passim

*Davis v. Twp. of Hillside*,
190 F.3d 167 (3d Cir. 1999) ............................................................................ Passim

*Decibus v. Woodbridge Twp. Police Dep't*,
  1990 WL 106723 (D.N.J. July 25, 1990) ............................................ 18

*District of Columbia v. Wesby*,
  138 S.Ct. 577 (2018) ........................................................................... 11

*Donahue v. Borough of Collingdale*,
  2024 WL 387455 (E.D. Pa. Feb. 1, 2024) ........................................ 6, 7

*Espigh v. Borough of Lewistown*,
  2021 WL 308949 (M.D. Pa. Jan. 29, 2021) .......................................... 6

*First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co.*,
  824 F.2d 277 (3d Cir. 1987) ................................................................. 3

*Forrest v. Parry*,
  930 F.3d 93 (3d Cir. 2019) ................................................................. 19

*Gans v. Mundy*,
  762 F.2d 338 (3d Cir. 1985) ................................................................. 2

*George v. Rehiel*,
  738 F.3d 562 (3d Cir. 2013) ............................................................... 11

*Gilles v. Davis*,
  427 F.3d 197 (3d Cir. 2005) ............................................................... 15

*Kaucher v. County of Bucks*,
  455 F.3d 418 (3d Cir. 2006) ................................................................. 4

*Modaffare v. Owens-Brockway Glass Container, Inc.*,
  643 F. Supp. 2d 697 (E.D. Pa. 2009) ................................................... 3

*Monell v Dep't of Soc. Serv. of the City of N.Y.*,
  436 U.S. 658 (1978) .................................................................... 13, 14

*Montgomery v DiSimone*,
  159 F.3d 120 (3d Cir. 1998) ........................................................ 13, 16

*Owens v. Coleman*,
  629 Fed.Appx. 163 (3d Cir. 2015) ...................................................... 15

*Pahler v. City of Wilkes–Barre*,
  207 F. Supp. 2d 341 (M.D. Pa. 2001) ................................................. 16

*Pembaur v. Cincinnati*,
  475 U.S. 469 (1986) ........................................................................... 19

*Poles v. St. Joseph's Univ.*,
  1995 WL 542246 (E.D. Pa. Sept. 11, 1995) ......................................... 3

*Rodriguez Fuentes v. Sch. Dist. of City of Philadelphia*,
  2019 WL 1505861 (E.D. Pa. Apr. 4, 2019) ........................................ 17

*Sauers v. Borough of Nesquehoning*,
  905 F.3d 711 (3d Cir. 2018) ............................................................ 5, 6

*Schwartz v. Hospital of Univ. of Pa.*,
  1993 WL 153810 (E.D. Pa. May 7, 1993) ............................................ 3

*Scott v. Harris*,
  550 U.S. 372 (2007) ....................................................................... 8, 10

*Shields v. Wiegand*,
  2022 WL 4586124 (E.D. Pa. Sept. 29, 2022) .................................... 6, 7

*United States v. Diebold, Inc.*,
  369 U.S. 654 (1962) ............................................................................. 2

*Valles v. Cumberland Cty.*,
   2019 WL 4051858 (D.N.J. Aug. 28, 2019) ........................................................... 14
*Williams v. Borough of West Chester, Pa.*,
   891 F.2d 458 (3d Cir. 1989) ............................................................................... 3

Statutes

42 Pa. C.S. §§ 8541 .......................................................................................... 12
42 Pa.C.S.A § 8542(b)(1) ............................................................................ 12, 13
42 U.S.C. § 1983 ....................................................................................... Passim

Rules

Fed. R. Civ. P. 56(c) ........................................................................................... 2
Rule 56 of the Federal Rules of Civil Procedure ................................................. 1

Defendants, the City of Philadelphia ("City") and Police Officers Christian Kane and Alexander Hernandez ("Officer Kane" and "Officer Hernandez"), by and through the undersigned counsel, hereby move for summary judgment on all the federal claims asserted by Plaintiff Joshua Otero against Defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Honorable Court's Policies and Procedures.

## I. INTRODUCTION

Defendants move for partial summary judgment on all claims against them except the state law negligence claim against Police Officer Christian Kane made by the Plaintiff, Joshua Otero (herein after "Plaintiff" and "Plaintiff Otero"). Plaintiff Otero is the administrator of the estate of Virgen Martinez and is also Ms. Martinez's son. Virgen Martinez was driving to work the morning of November 19, 2020 when her vehicle was struck by Defendant Tahir Ellison. Defendant Ellison, who was fleeing from Officers Kane and Hernandez, ran a red light immediately before striking Ms. Martinez's driver side door. This collision killed Ms. Martinez.

Plaintiff in Count I of his Complaint asserts against Officers Kane and Hernandez a claim pursuant to 42 U.S.C. § 1983, specifically for violating Virgen Martinez's constitutional right to substantive due process as guaranteed by the Fourteenth Amendment, because the Officers caused a state-created danger "[b]y engaging in an unjustified high-speed pursuit." Exhibit A at ¶¶ 58-73. In Count II, Plaintiff asserts against the City of Philadelphia a claim pursuant to 42 U.S.C. § 1983, specifically a *Monell* claim alleging that the "City of Philadelphia failed to adequately train Philadelphia Police Department officers, including Officers Kane and Hernandez, in the conduct of police pursuits, which resulted in…the violation of Ms. Martinez's rights under the Constitution". Id.at ¶¶ 74-83. In addition, in Count III, Plaintiff brings a state law negligence claim against Officers Kane and Hernandez alleging that "[a]s a direct and proximate result of the breach

1

of the duty of care Officers Kane and Hernandez owed to Ms. Martinez, Mr. Ellison's vehicle violently collided with that of Ms. Martinez…" *Id*.at ¶¶ 84-95.

Plaintiff cannot prove a due process claim under the Fourteenth Amendment because he must prove that Officers Kane and Hernandez engaged in the pursuit of Defendant Ellison specifically with the intent to harm, which Plaintiff cannot do. Plaintiff cannot prove a *Monell* because there is no evidence the City of Philadelphia was the moving force behind a constitutional injury suffered by Ms. Martinez, and because there was no constitutional injury suffered by Ms. Martinez. Finally, Officer Hernandez cannot be liable under Plaintiff's state law negligence claim because he never operated the police vehicle at issue.

For these reasons, the Court should enter summary judgment in favor of Defendants.

## II.    STATEMENT OF FACTS

Defendants incorporate their Statement of Undisputed Material Facts ("SUMF"), filed separately, in support of their Motion for Summary Judgment, as if fully set forth herein.

## III.    STANDARD OF REVIEW

The Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. See <u>id</u> at 248. All inferences must be drawn, and all doubts resolved in favor of the non-moving party. See *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gans v. Mundy*, 762 F.2d

338, 341 (3d Cir. 1985). Still, "[a]n inference based on speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Modaffare v. Owens-Brockway Glass Container, Inc.*, 643 F. Supp. 2d 697, 700 (E.D. Pa. 2009) (internal quotations omitted).

On motion for summary judgment, the moving party bears the initial burden of identifying these portions of the record that it believes demonstrate the absence of material fact disputes. See *Celotex*, 477 U.S. at 323. To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party, and may not rest on mere denials. See *Id.* at 321, n.3; *First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir. 1987).

In a case where the non-moving party is the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Celotex*, 477 U.S. at 322. The non-moving party must adduce more than a mere scintilla of evidence in its favor to defeat the moving party's summary judgment motion. *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989).

Although all justifiable inferences must be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party." *Schwartz v. Hospital of Univ. of Pa.*, 1993 WL 153810 at *2 (E.D. Pa. May 7, 1993). Furthermore, the "[p]laintiff cannot simply reassert factually unsupported allegations in its pleadings." *Poles v. St. Joseph's Univ.*, 1995 WL 542246 at *5 (E.D. Pa. Sept. 11, 1995) (citing

*Celotex*, 477 U.S. at 325). "Plaintiff must present affirmative evidence in order to defeat this properly supported motion for judgment." *Id.*

IV.    **ARGUMENT**

   **A.  Plaintiff Cannot Prove a Fourteenth Amendment Claim**

   Plaintiff cannot prove a due process claim under the Fourteenth Amendment. The Due Process Clause "is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)) (citations omitted). A plaintiff attempting to establish a substantive due process claim must prove that the interest at stake is one protected by the Due Process Clause, and that the government's deprivation of that interest "shocks the conscience." *See, e.g., Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). Negligence is not a violation of the Fourteenth Amendment's substantive due process guarantees against abusive exercises of governmental power. *See Lewis*, 523 U.S. 833; *Kaucher v. County of Bucks*, 455 F.3d 418, 435 (3d Cir. 2006). Here, Plaintiff must prove that Officers Kane and Hernandez engaged in pursuit specifically with the intent to harm Defendant Ellison, which Plaintiff cannot do.

   **1**. **High Speed Chases of Fleeing Suspects are Only Unconstitutional When the Officer has an Intent to Harm**

   The Supreme Court has held that an officer pursuing a fleeing suspected offender is only constitutionally liable under the Fourteenth Amendment for any harm suffered by the suspect or a third-party if the officer's actions in pursuing the suspect exhibited an "intent to harm." *See Lewis,* 523 U.S. at 844. In *Lewis,* a sheriff's deputy attempted to stop two boys on a motorcycle for a traffic infraction. *Id.* at 837. The driver of the motorcycle led multiple deputies on a high-speed chase through a residential neighborhood, at times reaching up to 100 miles per hour. *Id.* at 837.

The Court specifically notes that the pursuing deputy was sometimes within 100 feet of the motorcycle, and "at that speed, [the patrol car] would have required 650 feet to stop." *Id.* at 837. The suspect's motorcycle eventually tipped over as he tried to make a sharp turn and one of the deputies – the one who was driving at such speed and proximity that contact was all but guaranteed if the motorcycle came to a sudden stop – skidded into the motorcycle's sixteen (16) year old passenger, killing him. *Id.* at 837. The Supreme Court applied the intent to harm standard and concluded that "[r]egardless whether [the deputy's] behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983." *Id.* at 854-55. The same conclusion is compelled here.

Since *Lewis*, the Third Circuit applied the intent to harm standard in *Davis*. In *Davis*, officers decided to investigate a vehicle simply because it lingered too long at a stop sign, and then the vehicle sped from the officers and a pursuit was initiated. *Davis v. Twp. of Hillside*, 190 F.3d 167, 169 (3d Cir. 1999). The Third Circuit later clarified the appropriate level of culpability necessary to "shock the conscience" in police pursuit cases. *See Sauers v. Borough of Nesquehoning*, 905 F.3d 711 (3d Cir. 2018) (considering a police pursuit where the officer reached speeds up to 100 mph attempting to catch up to a non-fleeing traffic violation suspect). *Sauers* established the following sliding scale of culpability: (1) when actions are taken in a "hyper-pressurized environment," liability can only be found if the police officer intended to harm someone; (2) when actions are taken within a time frame that allows an officer to engage in "hurried deliberation," liability can be found if the officer exhibited a conscious disregard of a great risk of serious harm; and (3) when actions constitute "unhurried judgment" taken with "time for careful deliberation," liability can be found with a showing of deliberate indifference. *Id.* at

717-18.

In so holding, the Third Circuit was very clear that this clarification did not otherwise disturb the well-established intent to harm standard in the context of the pursuit of fleeing suspects:

In the police pursuit context, it is also necessary to take into consideration the officer's justification for engaging in the pursuit. We recognize that most high-speed police pursuits arise when officers are responding to emergencies or when they must make split-second decisions to pursue fleeing suspects. **Our holding today does nothing to alter the longstanding principle that, in such cases, constitutional liability cannot exist absent an intent to harm.**

*Id.* at 723 (emphasis added).

Thus, even considering *Sauers*, the applicable standard for the present case is intent to harm because Defendant Ellison was actively fleeing from the Officers when he crashed. *Id.* at 720 ("*Lewis*, then, clearly established that an officer can be liable for a substantive due process violation resulting from a high-speed pursuit of a dangerously fleeing suspect only if the officer intended to cause harm."); *see also, Donahue v. Borough of Collingdale*, No. CV 22-1695, 2024 WL 387455, at *6 (E.D. Pa. Feb. 1, 2024)(holding *Sauers* test does not apply if suspect is fleeing, and that intent to harm standard must be applied when suspect is fleeing); *Shields v. Wiegand*, No. CV 20-2999, 2022 WL 4586124, at *5 (E.D. Pa. Sept. 29, 2022)(finding that according to *Sauers* and *Lewis*, when a suspect is actively fleeing the intent to harm standard applies); *Cole v. Jenkins*, No. 4:21-CV-01779, 2022 WL 2195451, at *3 (M.D. Pa. June 17, 2022)(applying the intent to harm standard when officer pursued motorcyclist for a speeding violation, pursued him through multiple townships, and eventually make contact with motorcycle causing the operator to crash); *Espigh v. Borough of Lewistown*, No. 1:19-CV-02221, 2021 WL 308949, at *5 (M.D. Pa. Jan. 29,

2021); *Burga v. City of Plainfield*, Civ. No. 17-1655, 2020 WL 2513507, at *10 (D.N.J. May 15, 2020) (applying intent to harm standard under *Sauers* to high-speed pursuit of a dangerously fleeing suspect).

The intent to harm standard is applied regardless of the situation or type of emergency officers are facing. In *Lewis*, the pursuit was started because the deputy saw a motorcycle speeding. *Lewis*, 523 U.S. at 836. In *Davis*, the pursuit began because officers noticed a vehicle with rear end damage that stopped at a stop sign for "an unusually long time". *Davis*, 190 F.3d at 169. "Nothing in *Lewis* suggests that courts are free to second-guess a police officer's decision to initiate pursuit of a suspect so long as the officers were acting "in the service of a legitimate governmental objective." *Davis*, 190 F.3d at 170 (3d Cir. 1999). The justification of the pursuit does not factor into the analysis of whether to apply to the intent to harm standard. *See Shields*, 2022 WL 4586124, at *6 (accepting plaintiff's allegation that there was no reason to initially stop plaintiff, and applying the intent to harm standard); *Donahue*, 2024 WL 387455, at *4 (applying intent to harm standard when pursuit began for the "summary traffic offenses" of making an illegal left turn with a broken taillight).

The amount of time an officer has to react or to make a decision is also not part of the intent to harm analysis. *Sauers* held that what standard of culpability to apply depends on "how much time a police officer has to make a decision." As discussed above, *Sauers* applies only when the suspect is not fleeing. Police pursuits are "[u]nder binding precedent, … 'hyperpressurized environments requiring a snap judgment.'" *Donahue*, 2024 WL 387455, at *3(holding that plaintiff's argument that the officers had "minutes to weigh the costs and benefits of chase before engaging in the high-speed pursuit" was no relevant because suspect refused to stop for the officers). As *Lewis* points out, "prudence" could have repressed the officer's decision to pursue,

but that did not matter, what mattered was in pursuing the officer intended "to do his job as a law enforcement officer". *Lewis*, 523 U.S. at 855. In fact, any analysis into the alternate courses of action an officer could have undertaken other than pursuing is not necessary, because the Constitution does not impose a duty on officers to stop a pursuit lest the fleeing suspect cause injury. *See Scott v. Harris*, 550 U.S. 372, 385–86 (2007)(holding that in the Fourth Amendment context police are not required to allow fleeing suspects to get away when they drive recklessly).

It is undisputed that Defendant Ellison refused to stop for Officers Kane and Hernandez. Defendants' SUMF ¶¶ 4-5, 76, 93-94. Because Defendant Ellison elected to flee, the intent to harm standard applies to Officer Kane's decision to pursue him and his actions afterwards in pursuit. Moreover, because the facts of this case directly mirror those of *Lewis* and *Davis*, this Court should apply the intent to harm standard in this case. Like in *Lewis* and *Davis*, Officer Kane's pursuit of Defendant Ellison was one continuous act based on a decision to begin following a suspect; Officer Kane never stopped and then restarted his pursuit. Defendants' SUMF ¶13. Officer Kane had reason to begin following and pursing Defendant Ellison, they saw him giving out what appeared to be drugs to gathered crowd. Defendants' SUMF ¶¶ 24-26. The actions of Officers Kane and Hernandez were taken in a "hyper-pressurized environment". When Defendant Ellison turned onto Jasper Street going the wrong way, Officer Kane testified he had only "two seconds" to decide what to do. Defendants' SUMF ¶43. Officer Hernandez added the actions of that day occurred so fast he had no time to consider his actions. Defendants' SUMF ¶44. The time that elapsed from the moment Officer Hernandez radioed that Defendant Ellison took off on them until Defendant Ellison struck and killed Ms. Martinez, was only 39 seconds. Defendants' SUMF ¶61. That is even less time than the pursuit in *Lewis*, which was seventy-five (75) seconds. *Lewis*, 523 U.S. at 837. The intent to harm standard applies to this case.

**2. Plaintiff Cannot Show Officers Kane and Hernandez Intended to Harm Defendant Ellison**

Plaintiff has the burden of proving that Officers Kane and Hernandez intended to harm Defendant Ellison. *Davis v. Twp. of Hillside*, 190 F.3d 167, 170 (3d Cir. 1999)(holding bystander injured when police rammed suspect could not maintain substantive due process claim because officers did not intend to cause harm to suspect). Intent to harm is a very high burden to prove, and one that cannot be met with the facts of this case. *Davis* defines what is required to show an intent to harm, and found this standard was not met even when an officer purposely rammed the pursued vehicle, causing the driver to be knocked unconscious and crash. *Id.* at 169. In *Davis*, two patrol cars began to follow a vehicle when it stopped at a stop sign for "an unusually long time". *Id.* This car then pulled away from the patrol cars, and one of the patrol cars responded by getting ahead of the fleeing vehicle, coming close to hitting the fleeing vehicle in the process. *Id.* The pursuit reached speeds of up to seventy miles per hour, and the patrol cars in pursuit got as close as one car length to the fleeing vehicle. *Id.* One of the officers testified that he intentionally "bumped into the rear" of the fleeing vehicle. *Id.* This contact caused the fleeing vehicle's driver to pass out when he struck his head, and his vehicle lost control and caused an accident that injured the plaintiff, who was a bystander standing on the sidewalk. *Id.* Finally, there was evidence that the officers willfully violated police directives in the pursuit. *Id.* at 170. The Third Circuit Court found all of these facts together could not permit the inference of an intent to harm.

A chase ending because of deliberate contact with the pursued vehicle cannot be inferred to show an intent to harm because it is only "'conduct intended to injure in some way *unjustifiable by any government interest* [that] is the sort of official action most likely to rise to the conscience-shocking level.'" *Lewis*, 523 U.S. at 834(emphasis added). *Davis* rejected the argument that the

9

bumping of the fleeing vehicle amounted to use of a deadly weapon, holding that such contact was foreseeable in a highspeed chase. *Davis*, 190 F.3d at 171; *see also Scott v. Harris*, 550 U.S. 372, 386, 127 S. Ct. 1769, 1779, 167 L. Ed. 2d 686 (2007)(finding in the Fourth Amendment context that it was reasonable for an officer to terminate a high speed pursuit by hitting the bumper of the fleeing vehicle, causing it to crash and causing driver serious injuries). Importantly, the Court held that *Lewis* demands that the actions of officers in pursuit cannot be segmented and viewed in isolation. *Id.* If the intent of an officer is to do his job as a law enforcement officer, and not to cause harm, then it does not matter if the officer acts "recklessly or imprudently." *Id.* If there is no evidence of the officer's actions being "tainted by an improper or malicious motive," then a plaintiff cannot prove intent to harm, even if the officer takes actions that put the plaintiff at risk of harm. *Id.* at 171 (quoting *Lewis*, 523 U.S. at 855).

There is no evidence that Officer Kane or Officer Hernandez intended to harm Defendant Ellison. The only evidence is that Officer Kane followed Defendant Ellison for a brief time, and that Officer Kane kept a car length or more between their cars during the pursuit. Defendants' SUMF ¶13. And while both vehicles increased their speed on Allegheny, Officer Kane clearly chose not to keep pace with Defendant Ellison. *Id.*; *see also Id.* at ¶55. Officer Kane's conduct, , if aggressive at all, was far less aggressive than what occurred in *Lewis* and *Davis*. There is no evidence that Officer Kane ever tried to contact his car with Defendant Ellison's. Officer Kane's actions in pursuit were police actions, to apprehend a suspect, and there is no evidence of any malicious intent. Furthermore, intent to harm cannot be inferred an officer's violation of police directives. *Davis* found that: "*Lewis* thus squarely refutes plaintiff's contention that the officers' violation of police department regulations, which might be probative of recklessness or conscious disregard of plaintiff's safety, suffices to meet the shocks-the-conscience test under the due process

clause." *Id.* at 170.

This tragic accident was not caused by Officer Kane and Officer Hernadez doing their jobs as law enforcement officers; it was caused by Defendant Ellison's decision to flee and drive recklessly. There is no evidence that Defendant Ellison's fateful decision to run a red light was induced by any malicious motive on the part of Defendants. Plaintiff cannot prove Officers Kane and Hernandez acted with an intent to harm Defendant Ellison, and so cannot prove a due process claim under the Fourteenth Amendment

### B.  Officer Kane and Officer Hernandez are Entitled to Qualified Immunity

Government officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *See District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (internal quotation marks omitted). Qualified immunity shields officers from liability unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct." *See George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (internal quotation marks omitted). A right only qualifies as clearly established if its "contours . . . are sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *See Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2078 (2011) (internal citations and quotation marks omitted). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (internal quotation marks omitted).

Defendants here are protected under the first prong of the qualified immunity analysis because, for the reasons discussed above, Plaintiff cannot establish on the record evidence that they violated decedent's Fourteenth Amendment rights. Additionally, Defendants are protected by qualified immunity under the second prong of the analysis because Plaintiff can point to no

precedential law that clearly establishes that it is unconstitutional to engage in a pursuit when the suspect flees and the officers have no intent to harm.

Additionally, Officer Hernandez was not the driver on the day of the accident, and so did not make the decision to pursue. Defendant Ellison. Defendants' SUMF ¶20. Officer Hernandez had no command authority over Officer Kane on the day of the accident. Defendants' SUMF ¶¶22-23. There is record evidence that the decision to follow Defendant Ellison was made by Officer Hernandez. Plaintiff can point to no precedential law that clearly establishes that it is unconstitutional to be the passenger in a police vehicle that elects to engage in a pursuit.

### C. Plaintiff cannot prove a State negligence claim against Officer Hernandez because he was not operating the police vehicle

In Count III, Plaintiff brings a state law negligence claim against Officer Hernandez for "engaging in a reckless high-speed pursuit of Mr. Ellison". This claim cannot succeed against Officer Hernandez because he was not operating the police vehicle at issue.

The City and its employees are generally immune from all negligence claims. The Political Subdivision Tort Claims Act, 42 Pa. C.S. §§ 8541-64, lists nine (9) exceptions to governmental immunity. Here, the only applicable exception would be the motor vehicle exception. 42 Pa.C.S.A § 8542(b)(1). The motor vehicle exception provides that:

> The **operation** of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer. As used in this paragraph, "motor vehicle" means any vehicle which is self-

propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa.C.S.A § 8542(b)(1) (emphasis added).

Plaintiff must show that Officer Hernandez operated the vehicle at issue, and this operation was negligent. See *Balentine v. Chester Water Auth.*, 648 Pa. 105, 122–23 (2018)(holding to make a claim under the Tort Claims Act a plaintiff must plead that a government employee operated the vehicle and that the alleged injury was caused by that operator's negligent act under).

It is undisputed that Officer Kane was the driver on the day of the accident, and Officer Hernandez was a passenger. Defendants' SUMF ¶20. Officer Kane performed all the driving during the incident at issue. There is also no evidence that Officer Hernandez operated any of the broader functionalities of the police car, like its siren or emergency lights. Defendants' SUMF ¶¶31-32. Because there is no evidence that Officer Hernandez operated the vehicle at issue, Plaintiff's negligence claim against him must fail.

### D. Plaintiff cannot prove a *Monell* against the City of Philadelphia

In Count II, Plaintiff brings a *Monell* claim against the City for allegedly violating Virgen Martinez's constitutional right to substantive due process by "promulgat[ing] a policy, directive, and/or custom and practice governing police pursuits, which resulted in Officers Kane and Hernandez engaging in an unjustified and hazardous high-speed chase in a residential and densely populated area during morning rush hour." Exhibit A, ¶79. It is well established that under 42 U.S.C. § 1983, local government defendants cannot be held liable under a theory of *respondeat superior*. Rather, municipal liability only arises when a constitutional deprivation results from an official custom or policy. *Montgomery v DiSimone*, 159 F.3d 120,126 (3d Cir. 1998) (citing *Monell v Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658 (1978)). Liability attaches only when the

13

execution of a policy or custom has caused a violation of a plaintiff's constitutional rights. *Monell*, 436 U.S. at 694. Policy is made when a decisionmaker possessing final authority to establish governmental policy issues an official proclamation, policy or edict. *Andrews v City of Phila.*, 895 F. 2d 1469, 1480 (3d Cir. 1990). Although custom instead can be proven by a given course of conduct, such conduct must be so well-settled and permanent as to virtually constitute law. *Id.*

Regardless of whether a plaintiff seeks to proceed under a policy or custom theory of liability, that plaintiff "must show that the adoption of the policy or custom was 'taken with the requisite degree of culpability and must demonstrate a causal link between the municipal . . . action and the deprivation of federal rights.'" *Valles v. Cumberland Cty.*, No. CV 16-4757(NLH), 2019 WL 4051858, at *9 (D.N.J. Aug. 28, 2019) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)). "Where the municipal action taken was facially lawful — i.e., did not directly cause the alleged violation — the requisite degree of culpability is at least 'deliberate indifference' to the known or obvious consequences of the taken action." *Id.* "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011)(quoting Bryan Cty., 520 U.S. at 410) (internal quotation marks omitted).

Here Plaintiff advances one potential theory of liability in his Complaint: "the City of Philadelphia failed to adequately train Philadelphia Police Department officers, including Officers Kane and Hernandez, in the conduct of police pursuits." Exhibit A, ¶81. Plaintiff's expert, Dr. Christopher Chapman, puts forward one additional theory, the City's alleged policy or custom of failing to supervise caused Ms. Martinez's harm.

As an initial matter, Defendant City is not liable under § 1983 because, for the reasons discussed above, there was no violation of Plaintiff's federal constitutional rights in this case. *See*

14

*Brown v. Pa. Dept. of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003) (City not liable where there is no underlying constitutional violation). Even if there was a constitutional violation, Plaintiff cannot establish a *Monell* claim because the evidentiary record is devoid of evidence to support any of Plaintiff's theories of liability.

**1. There is No Record Evidence Supporting that Ms. Martinez's Injuries Resulted from the PPD's Failure to Train its Police Officers**

Although the failure of a municipality to train its employees may support a *Monell* claim, such a theory represents the most "tenuous" sort of municipal liability under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). A municipality may be liable under § 1983 for failing to train its employees "when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the [employees] may come into contact." *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005) (*citing City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). In order to establish such a claim, a plaintiff must demonstrate that: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or history of employees mishandling; and (3) the wrong choice by an employee will frequently cause a deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999).

To establish a claim for failure to train, a plaintiff must show a pattern of unconstitutional behavior. *Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."); *Owens v. Coleman*, 629 Fed.Appx. 163, 167 (3d Cir. 2015) ("A pattern of similar constitutional violations is typically necessary to demonstrate deliberate indifference for purposes of failure to train."). Additionally, a plaintiff must

identify the specific training that the municipality should have offered, and demonstrate that such training was never provided. *See Pahler v. City of Wilkes–Barre*, 207 F. Supp. 2d 341, 353 (M.D. Pa. 2001). In *Canton,* the Court explained that it is not enough to show that the municipality is responsible for the training program in question, nor is it enough to establish that a particular employee has been unsatisfactorily trained, as the employee's shortcomings may be the result of factors other than a faulty training program. *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989). It is likewise not enough to prove that an incident would not have happened if an employee had "better" or "more" training, because even the best-trained employees will occasionally make mistakes. *See Id.* at 391. *Canton* concluded that a municipality's alleged failure to train will give rise to liability *only* where the failure to train "reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.*

As stated differently by the Third Circuit, a failure to train police officers "can only form the basis for section 1983 municipal liability if the plaintiff can show *both* contemporaneous knowledge of the offending incident or a prior pattern of similar incidents *and* circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (emphasis added).  In order to survive summary judgment on a failure to train theory, plaintiff(s) "must present evidence that the need for more or different training was *so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference.*" *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (emphasis added).

Plaintiff wholly fails to satisfy the elements of a failure to train claim. As for failing to show a pattern of unconstitutional behavior, Plaintiff is unable to identify support for any such

16

pattern in the record. It is anticipated that Plaintiff will point to the PPD statistics showing an increase in total pursuits, justified pursuits, and not justified pursuits. See Exhibit K, page 35. This data does not show a pattern of constitutional violations, as a pursuit labeled "not justified" has no bearing on whether it was unconstitutional. In fact, PPD's policy of what is a justified pursuit, limited to preventing death or serious bodily injury or when necessary to make an arrest for a felony involving risk of serious bodily harm, is clearly far greater than what the Constitution demands. See *Lewis*, 523 U.S. 833, 835 (pursuit begun for mere traffic violation did not give rise to substantive due process liability); *see also* Exhibit R. Plaintiff cannot point to a pattern of constitutional violations regarding pursuits that the City was on notice of, and so cannot show why the City should have been on notice that their training was allegedly insufficient or that more or different training was required.

Nor can Plaintiff produce any evidence as to what specific training the City failed to provide, that the City has failed to provide constitutionally sufficient training, or that any such failure was the causal nexus to Plaintiff's injuries. *See Rodriguez Fuentes v. Sch. Dist. of City of Philadelphia*, No. CV 17-3736, 2019 WL 1505861, at *13 (E.D. Pa. Apr. 4, 2019) ("granting summary judgment where "Plaintiff has not established such a nexus."). What Plaintiff must prove is the City's training is constitutionally "inadequate", not that the particular officers were not satisfactorily trained. But, Plaintiff's Expert Chapman, while noting that Officers Kane and Hernandez do not remember their training and misinterpreted the City's policy on pursuits, does nothing to show the City's training is insufficient. Every police officer in PPD's academy is instructed on pursuits, they receive driving simulator training that includes pursuit scenarios, and they must pass a written test that includes pursuit related question. Defendants' SUMF ¶¶ 98, 102, 104. Plaintiff produces no evidence or expert opinion to show why this robust training is somehow

constitutionally insufficient.

Further, Plaintiff's attempt to predicate his failure-to-train claim on a failure to have a specific annual refresher training that is required and dedicated to pursuit rests on shaky doctrinal ground. Although one could undoubtedly easily come up with a lengthy list of important issues where more frequent and intensive instruction of police officers would be ideal and preferable, "perfection is not the standard" for the minimum training required by the U.S Constitution. *Cottman v. Farabella*, No. 119CV14122NLHAMD, 2021 WL 2651036, at *7 (D.N.J. June 28, 2021), *reconsideration denied*, No. 119CV14122NLHAMD, 2022 WL 1295455 (D.N.J. Mar. 31, 2022). To the contrary, "[t]raining is no exception to the well-known rule that nothing is perfect." *Decibus v. Woodbridge Twp. Police Dep't*, No. CIV.A. 88-2926, 1990 WL 106723, at *2 (D.N.J. July 25, 1990). Instead, in order for liability to attach to a municipality, its training program must be such that, "in light of the duties assigned to specific officers or employees the need for more or different training is *so obvious*, and the inadequacy [of the current training] *so likely* to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* (second alteration in original) (internal quotation marks omitted) (emphases added). As shown above, there is no evidence of PPD's training being "*likely* to result in the violation of constitutional rights".

Notwithstanding the fact that Plaintiff's Expert Chapman does not opine how often such retraining needs to occur or to how much is constitutionally necessary, he also disregards PPD's multiple initiatives at providing retraining its officers. The PPD provides monthly proactive training regarding Vehicle Pursuit Directive 9.4 to reacclimate officers with the pursuit policy, and requires each Police District to send two officers to the training. Defendants' SUMF ¶107. In addition, any officer involved in an unjustified pursuit is supposed to attend a training class which

includes use of driving simulator with pursuit scenarios. Defendants' SUMF ¶105, Finally, PPD's Driving Training Unit does roll call training on pursuit, and conducts on-road evaluations of officers to ensure they are following of all PPD's driving requirements. Defendants' SUMF ¶110. Plaintiff's expert ignores all of these different retraining initiatives, and provides no evidence as to why this retraining is not constitutionally sufficient.

**2. There is No Record Evidence Supporting that Ms. Martinez's Injuries Resulted from the PPD's Failure to Supervise its Police Officers**

The standards applicable to a failure to supervise or failure to train *Monell* claim are essentially the same. *Barkes v. First Corr. Med., Inc*., 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds*, *Taylor v. Barkes*, 575 U.S. 822 (2015) (*per curiam*) (explaining that "failure to" claims are generally considered to be a subcategory of "policy or practice" liability). In such cases, "a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). This is because "'[m]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)(quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986) (plurality)).

"Under a failure to supervise theory, a plaintiff must show '(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Ashley v. Kosehba*, No. 1:22-CV-00982, 2023 WL 6200805, at *6 (M.D. Pa. Sept. 22, 2023)(quoting *Forrest v. Parry*, 930 F.3d 93, 105–06 (3d Cir. 2019)). Thus, like a failure to train claim, Plaintiff must have evidence of knowledge

on the part of the City of a pattern of unconstitutional behavior. And as explained above, Plaintiff is unable to identify support for any such pattern in the record. Specifically, Plaintiff is unable to point out in the record any pattern or history of a failure to supervise leading to constitutional violations.

In fact, Plaintiff's Expert Chapman can only say state that "Captain Rosario, Lieutenant Mella, Sergeant Bloom and Sergeant Casale" should have called off Officers Kane and Hernandez's pursuit, and the failure to do so caused the harm at issue in this case. *See* Exhibit K, pages 32-33. This is not an argument for *Monell* liability, and instead seeks to hold the City of Philadelphia liable under a theory of *respondeat superior*, which the law does not allow. In fact, this argument highlights why Plaintiff's *Monell* claim must fail. The City had multiple supervisors responsible for listening to police radio at the time of the accident, and as Chapman admits, if one of those supervisors had responded to Officer Hernandez this incident could have been prevented. *Id.* The fact that no supervisor heard or was able to respond to Officer Hernandez in the 39 seconds that elapsed between his radio call and Defendant Ellison's accident can be, at most, negligence. Defendants' SUMF ¶62. The inability to radio back to Officer Hernandez in such a short period is far from a constitutional violation, and even if it were, such a violation would not be one the City of Philadelphia put into motion.

"Where the policy or custom at issue is not itself . . . unconstitutional, courts require a heavy, if not insurmountable burden on a plaintiff to prove liability as a result of inadequate, as opposed to unconstitutional, training or supervision of police officers." *Artiles v. Vitanza*, No. CIVA 06-5427 KSH, 2009 WL 2426259, at *29 (D.N.J. Aug. 6, 2009)(internal quotation marks omitted). Plaintiff cannot meet this high burden. There is nothing "conscience shocking" about the City of Philadelphia's recruit training, reactive training, and proactive training on pursuit. There is

no evidence of the City being aware of any inadequacy in its training or supervision of officers, and there is nothing to show that City was the moving force behind any constitutional harm.

## V.  CONCLUSION

For the reasons set forth above, partial summary judgment should be entered in favor of Defendants, and against Plaintiff.

Respectfully submitted,

*/s/ Derek Kane*
Derek Kane, No. 316941
Deputy City Solicitor
City of Philadelphia Law Dept.
1515 Arch St., 14th Floor
Philadelphia, PA 19102
derek.kane@phila.gov
*Attorney for Defendants P/O*
*Christian Kane, P/O Alexander*
*Hernandez and City of Philadelphia*

Date:  March 1, 2024

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| **Joshua Otero, as Administrator of the** | : | **Civil Action** |
| **Estate of Virgen Martinez** : | | |
| | : | **NO: 22-4141** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **P/O Christian Kane, P/O Alexander** | : | **JURY TRIAL DEMANDED** |
| **Hernandez, City of Philadelphia and** | : | |
| **Tahir Ellison** | : | |
| | : | |
| **Defendants.** | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, the Defendants' Motion for Partial Summary

Judgment was filed via the Court's electronic filing system and is available for downloading by

all parties of record.

Respectfully submitted,

<u>/s/ Derek Kane</u>
Derek Kane, No. 316941
Deputy City Solicitor
City of Philadelphia Law Dept.
1515 Arch St., 14th Floor
Philadelphia, PA 19102
derek.kane@phila.gov
*Attorney for Defendants P/O*
*Christian Kane, P/O Alexander*
*Hernandez and City of Philadelphia*

Date: March 1, 2024