KLINE & SPECTER, P.C.
By:   SHANIN SPECTER, PA ID# 40928
        shanin.specter@klinespecter.com
        JAMES J. WALDENBERGER, PA ID# 83837
        jim.waldenberger@klinespecter.com
        HELEN A. LAWLESS, PA ID# 327249
        helen.lawless@klinespecter.com
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000/fax: (215) 772-1359
*Attorneys for Plaintiffs*

*Filed and Attested by the Office of Judicial Records 29 SEP 2022 12:56 pm MERCEDES*

---

| | |
|---|---|
| **JOSHUA OTERO, as Administrator of the Estate of VIRGEN MARTINEZ, DECEASED**<br>4247 K. Street<br>Philadelphia, PA 19124 | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>CIVIL DIVISION |
| Plaintiff, | SEPTEMBER TERM, 2022 |
| -vs- | |
| **P/O CHRISTIAN KANE, in his individual and official capacity**<br>Philadelphia Police Department<br>15th District<br>2831 Levick Street<br>Philadelphia, PA 19149 | NO. 220901284 |
| | JURY TRIAL DEMANDED |
| and | |
| **P/O ALEXANDER HERNANDEZ in his individual and official capacity**<br>Philadelphia Police Department<br>15th District<br>2831 Levick Street<br>Philadelphia, PA 19149 | **NOTICE TO DEFEND AND COMPLAINT IN CIVIL ACTION** |
| and | |
| **CITY OF PHILADELPHIA**<br>Department of Law<br>City Hall, 17th Floor<br>1515 Arch Street<br>Philadelphia, PA 19102 | |
| and | |

Case ID: 220901284

**TAHIR ELLISON**
SCI Rockview
1 Rockview Place
Bellefonte
Rockview, PA  16823

and

**JOHN DOES NOS. 1-10**
(fictious designation of individual(s) who
were employees, servants and/or agents of the
City of Philadelphia, including but not limited
to any officer, supervisor, dispatcher, and/or
other individual, who was involved i

Defendants

## PRAECIPE TO REINSTATE COMPLAINT

TO THE PROTHONOTARY:

    KINDLY reinstate the attached Complaint filed in the above matter

                               **KLINE & SPECTER, P.C.**

               BY:   */s/ James J. Waldenberger*
                       JAMES J. WALDENBERGER, ESQUIRE
                       *Attorneys for Plaintiffs*

Dated:  9/29/2022

KLINE & SPECTER, P.C.
By:    SHANIN SPECTER, PA ID# 40928
        shanin.specter@klinespecter.com
        JAMES J. WALDENBERGER, PA ID# 83837
        jim.waldenberger@klinespecter.com
        HELEN A. LAWLESS, PA ID# 327249
        helen.lawless@klinespecter.com
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000/fax: (215) 772-1359
*Attorneys for Plaintiffs*

*Filed and Attested by the*
*Office of Judicial Records*
*29 SEP 2022 10:58 pm*

| | |
|---|---|
| **JOSHUA OTERO, as Administrator of the Estate of VIRGEN MARTINEZ, DECEASED**<br>4247 K. Street<br>Philadelphia, PA  19124<br><br>                            Plaintiff,<br><br>        -vs- | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CIVIL DIVISION<br><br>SEPTEMBER TERM, 2022 |
| **P/O CHRISTIAN KANE, in his individual and official capacity**<br>Philadelphia Police Department<br>15th District<br>2831 Levick Street<br>Philadelphia, PA  19149<br><br>                    and | NO.<br><br><br>JURY TRIAL DEMANDED |
| **P/O ALEXANDER HERNANDEZ in his individual and official capacity**<br>Philadelphia Police Department<br>15th District<br>2831 Levick Street<br>Philadelphia, PA  19149<br><br>                    and | **NOTICE TO DEFEND AND COMPLAINT IN CIVIL ACTION** |
| **CITY OF PHILADELPHIA**<br>Department of Law<br>City Hall, 17th Floor<br>1515 Arch Street<br>Philadelphia, PA  19102<br><br>                    and | |

Case ID: 220901284

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) | |
|---|---|
| **SEPTEMBER 2022** | **001284** |
| E-Filing Number: 2209027217 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| JOSHUA OTERO | CHRISTIAN KANE |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 4247 K. STREET<br>PHILADELPHIA PA 19124 | PHILADELPHIA POLICE DEPARTMENT 15TH DISTRICT<br>2831 LEVICK STREET<br>PHILADELPHIA PA 19149 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | ALEXANDER HERNANDEZ |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | PHILADELPHIA POLICE DEPARTMENT 15TH DISTRICT<br>2831 LEVICK STREET<br>PHILADELPHIA PA 19149 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | CITY OF PHILADELPHIA . |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | DEPARTMENT OF LAW CITY HALL, 17TH FLOOR 1515<br>ARCH STREET<br>PHILADELPHIA PA 19102 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | |
|---|---|---|---|
| 1 | 5 | ☒ Complaint ☐ Writ of Summons | ☐ Petition Action ☐ Notice of Appeal<br>☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

| CASE TYPE AND CODE |
|---|
| 2V - MOTOR VEHICLE ACCIDENT |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED<br>PRO PROTHY**<br>SEP **15** 2022<br>**E. HAURIN** | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES        NO |
|---|---|---|

---

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>JOSHUA OTERO</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| JAMES J. WALDENBERGER | KLINE&SPECTER<br>THE NINETEENTH FLOOR<br>1525 LOCUST STREET<br>PHILADELPHIA PA 19102 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)772-1000 | (215)772-1005 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 83837 | jim.waldenberger@klinespecter.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| JAMES WALDENBERGER | Thursday, September 15, 2022, 10:13 am |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF DEFENDANTS:

1. CHRISTIAN KANE
   PHILADELPHIA POLICE DEPARTMENT 15TH DISTRICT 2831 LEVICK STREET
   PHILADELPHIA PA 19149
2. ALEXANDER HERNANDEZ
   PHILADELPHIA POLICE DEPARTMENT 15TH DISTRICT 2831 LEVICK STREET
   PHILADELPHIA PA 19149
3. CITY OF PHILADELPHIA
   DEPARTMENT OF LAW CITY HALL, 17TH FLOOR 1515 ARCH STREET
   PHILADELPHIA PA 19102
4. TAHIR ELLISON
   SCI ROCKVIEW 1 ROCKVIEW PLACE BELLEFONTE
   ROCKVIEW PA 16823
5. JOHN DOES NOS. 1-10
   TBD
   TBD PA TBD

KLINE & SPECTER, P.C.
By:    SHANIN SPECTER, PA ID# 40928
      shanin.specter@klinespecter.com
      JAMES J. WALDENBERGER, PA ID# 83837
      jim.waldenberger@klinespecter.com
      HELEN A. LAWLESS, PA ID# 327249
      helen.lawless@klinespecter.com
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000/fax: (215) 772-1359
*Attorneys for Plaintiffs*

*Filed and Attested by the Office of Judicial Records 15 SEP 2022 10:13 am B. HAURIN*

| | |
|---|---|
| **JOSHUA OTERO, as Administrator of the Estate of VIRGEN MARTINEZ, DECEASED**<br>4247 K. Street<br>Philadelphia, PA 19124<br><br>               Plaintiff,<br>     -vs- | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CIVIL DIVISION<br><br>SEPTEMBER TERM, 2022 |
| **P/O CHRISTIAN KANE, in his individual and official capacity**<br>Philadelphia Police Department<br>15th District<br>2831 Levick Street<br>Philadelphia, PA 19149<br><br>and | NO.<br><br><br>JURY TRIAL DEMANDED |
| **P/O ALEXANDER HERNANDEZ in his individual and official capacity**<br>Philadelphia Police Department<br>15th District<br>2831 Levick Street<br>Philadelphia, PA 19149<br><br>and | **NOTICE TO DEFEND AND COMPLAINT IN CIVIL ACTION** |
| **CITY OF PHILADELPHIA**<br>Department of Law<br>City Hall, 17th Floor<br>1515 Arch Street<br>Philadelphia, PA 19102<br><br>and | |

**TAHIR ELLISON**
SCI Rockview
1 Rockview Place
Bellefonte
Rockview, PA  16823

and

**JOHN DOES NOS. 1-10**
(fictious designation of individual(s) who
were employees, servants and/or agents of
the City of Philadelphia, including but not
limited to any officer, supervisor,
dispatcher, and/or other individual, who
was involved in any aspect of the police
chase at issue)

Defendants

**NOTICE TO DEFEND**

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

**ADVISO**

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Asociacion de Licenciados de Filadelfia
Servicio de Referencia y Informacion
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

2

Case ID: 220901284

## CIVIL ACTION - COMPLAINT

### THE PARTIES

1.      Virgen Martinez, Decedent, died in a motor vehicle collision after Philadelphia police officers initiated a high-speed chase at or near Allegheny Avenue in Philadelphia, Pennsylvania, on November 19, 2020.

2.      Plaintiff, Joshua Otero, is an adult citizen and resident of the Commonwealth of Pennsylvania, currently residing at 4247 K Street, Philadelphia, Pennsylvania 19124. On August 24, 2022, Joshua Otero was duly appointed as the Administrator of the Estate of Virgen Martinez (See Letters of Administration attached as Exhibit A).

3.      Defendant Police Officer Christian Kane (hereinafter "Officer Kane") is an adult citizen and resident of the Commonwealth of Pennsylvania, and was at all times relevant to this Complaint, a police officer with Fifteenth District of the Philadelphia Police Department, whose business address is 2831 Levick Street, Philadelphia, Pennsylvania 19149.

4.      Defendant Police Officer Alexander Hernandez (hereinafter "Officer Hernandez") is an adult citizen and resident of the Commonwealth of Pennsylvania and was at all times relevant to this Complaint, a police officer with Fifteenth District of the Philadelphia Police Department, whose business address is 2831 Levick Street, Philadelphia, Pennsylvania 19149.

5.      Defendant City of Philadelphia is a city, political subdivision, governmental entity, and municipality in the Commonwealth of Pennsylvania, organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at City Hall, Department of Law, 17th Floor, 1515 Arch Street, Philadelphia, Pennsylvania 19102.

Case ID: 220901284

6.      At all times material hereto, Defendant, City of Philadelphia, owned, operated, maintained, was responsible for, and/or otherwise controlled the Philadelphia Police Department, including the 15th District.  At all relevant times hereto, Defendant, City of Philadelphia, was acting through its employees, servants and/or agents, including but not limited to Officers Kane and/or Hernandez, as well as any officer, supervisor, dispatcher, and/or other individual involved in any aspect of the police chase described below.

7.      At all times material hereto, the Philadelphia Police Department provided law enforcement services to the City of Philadelphia.

8.      At all relevant times, Officers Kane and Hernandez were employees, servants and/or agents of the City of Philadelphia, and acting in the course of scope of their employment.

9.      Defendants, John Does 1-10, is a fictious designation for individual(s) who were employees, servants and/or agents of the City of Philadelphia, including but not limited to any officer, supervisor, dispatcher, and/or other individual, who was involved in any aspect of the police chase at issue.

## JURISDICTION AND VENUE

10.      The preceding paragraphs are incorporated by reference as if fully set forth herein.

11.      This Court possesses subject matter jurisdiction over this matter under PA. CONST. ART. V. § 5 and 42 PA. CONS. STAT. § 931.

12.      This Court possesses personal jurisdiction over each defendant in this matter under 42 PA. CONS. STAT. § 5301(a)(1).

13.      Venue in this action is properly laid in Philadelphia County pursuant to Rules 1006 and 2103 of the Pennsylvania Rules of Civil Procedure, as the City of Philadelphia, a municipal entity, is located within the boundaries of Philadelphia County, Pennsylvania.

Case ID: 220901284

14.     The amount in controversy exceeds the local rules for amounts in controversy requiring arbitration.

## OPERATIVE FACTS

15.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

16.     At or about 8:30AM on November 19, 2020, Virgen Martinez was operating a 2003 Chevrolet Malibu, driving northeast bound on Frankford Avenue in Philadelphia, Pennsylvania. There were no other persons in the vehicle.

17.     Upon information and belief, at the same time, Officers Kane and Hernandez were on duty as officers of the Philadelphia Police Department operating a marked police cruiser.

18.     Officer Kane was the operator of the marked police cruiser and Officer Hernandez was the recorder, riding in the passenger seat.

19.     Officers Kane and Hernandez were wearing Philadelphia Police Department uniforms and carrying their badges.

20.     At or before 8:30 A.M. on November 19, 2020, on information and belief, Officers Kane and Hernandez began to pursue Defendant Tahir Ellison, who was operating a 2008 Kia Sportage along Clearfield Street, Philadelphia, Pennsylvania.

21.     Upon information and belief, prior to pursuing Mr. Ellison's vehicle, Officers Kane and Hernandez did not perform a search of Mr. Ellison's vehicle, had not received or corroborated information about Mr. Ellison or Mr. Ellison's vehicle from a named source, did not personally know Mr. Ellison's identity, had not approached or spoken to Mr. Ellison, and had not observed Mr. Ellison engaging in a forceful or violent felony.

Case ID: 220901284

22.     Upon information and belief, Officers Kane and Hernandez pursued Mr. Ellison at a high rate of speed, in excess of the posted speed limits, for an unknown distance and length of time.

23.     Upon information and belief, Officer Kane and/or Officer Hernandez activated the lights and sirens of their police cruiser while pursuing Mr. Ellison.

24.     Upon information and belief, Mr. Ellison refused to yield and stop despite being pursued by the officers and fled from the officers' marked vehicle at a high rate of speed, in excess of the posted speed limits, while the cruiser's lights and sirens were activated, in reckless disregard for the safety of pedestrians and motorists alike.

25.     Upon information and belief, Mr. Ellison then turned northbound onto Jasper Street, which is a one-way street in the southbound direction.  Officers Kane and Hernandez continued to pursue Mr. Ellison onto Jasper Street traveling in the wrong direction on this one-way street, while continuing at a high rate of speed, in excess of the posted speed limits, in reckless disregard for the safety of pedestrians and motorists alike.

26.     Upon information and belief, Mr. Ellison continued to refuse to yield despite being pursued by the officers and fled from the officers' marked vehicle at a high rate of speed, in excess of the posted speed limits, while the cruiser's lights and sirens were activated, in reckless disregard for the safety of pedestrians and motorists alike.

27.     Upon information and belief, Officers Kane and Hernandez continued to pursue Mr. Ellison onto East Allegheny Avenue, while still traveling at a high rate of speed, in excess of the posted speed limits, in reckless disregard for the safety of pedestrians and motorists alike, in reckless disregard for the safety of pedestrians and motorists alike.

Case ID: 220901284

28.     Upon information and belief, Mr. Ellison still refused to yield and stop despite being pursued by the officers and fled from the officers' marked vehicle at a high rate of speed, in excess of the posted speed limits, while the cruiser's lights and sirens were activated, in reckless disregard for the safety of pedestrians and motorists alike.

29.     Upon information and belief, Decedent Ms. Virgen Martinez approached and legally entered the intersection of Frankford Avenue and East Allegheny Avenue while traveling in accordance with posted speed limits.

30.     Upon information and belief, Mr. Ellison illegally entered the intersection of Frankford Avenue and East Allegheny Avenue vehicle at a high rate of speed, in excess of the posted speed limits, and against a red light.

31.     Upon information and belief, Officer Kane and Hernandez were still pursuing Mr. Ellison, at a high rate of speed, in excess of the posted speed limits, when he illegally entered the intersection of Frankford Avenue and East Allegheny Avenue.

32.     Upon information and belief, Mr. Ellison's vehicle violently struck Ms. Martinez's vehicle in the intersection of Frankford Avenue and East Allegheny Avenue.

33.     At the time of the collision, Ms. Martinez's vehicle was in the right lane on Frankford Avenue crossing East Allegheny Avenue.

34.     Upon information and belief, the front passenger side of Mr. Ellison's vehicle struck the front driver's side of Ms. Martinez's vehicle at a perpendicular angle.

35.     Upon information and belief, at the time of collision, Officers Kane and Hernandez were on East Allegheny Avenue in close pursuit of Mr. Ellison.

36.     Upon arrival of emergency responders, Ms. Martinez was pronounced dead on the scene at approximately 8:50AM.

Case ID: 220901284

37.     The Philadelphia Police Department has established guidelines governing acceptable police practices with respect to police pursuits and high-speed chases. (See "Philadelphia Police Department Directive 9.4, dated June 16, 2016" attached as Exhibit B).

38.     Pursuant to Directive 9.4, an officer may be justified in initiating a vehicular pursuit in only two situations. *See id.*

39.     Pursuant to Directive 9.4, the first situation wherein a vehicular pursuit may be necessary and justified is when the officers are in close proximity to a suspect vehicle and believe a pursuit is necessary to prevent the death or serious bodily injury of another person. *Id.*

40.     Pursuant to Directive 9.4, the second situation wherein a vehicular pursuit may be necessary and justified is when the officers are in close proximity to a suspect vehicle, the officers believe that the pursuit is necessary to prevent the suspect's escape, and the officer has probable cause that the person being pursued has committed or attempted to commit a forcible felony or possesses a deadly weapon, other than the vehicle itself. *Id.*

41.     Upon information and belief, this directive governing police practices with respect to police pursuits was created and promulgated by the Philadelphia Police Department and/or any other institutional authors employed by the City of Philadelphia and was established to protect innocent bystanders and motorists.

42.     Upon information and belief, the vehicular pursuit of Mr. Ellison jointly undertaken by Officers Kane and Hernandez violated Directive 9.4. *See id.* Consequently, it was an unjustifiable pursuit per police directives.

43.     Upon information and belief, Officers Kane and Hernandez did not reasonably believe that the pursuit of Mr. Ellison was necessary to prevent the death or serious bodily injury of another person.

8

Case ID: 220901284

44.     Upon information and belief, Officers Kane and Hernandez did not believe, and did not possess sufficiently reliable information that would support a reasonable belief, that the pursuit they undertook was necessary to effectuate Mr. Ellison's arrest and to prevent his escape.

45.     Upon information and belief, Officers Kane and Hernandez did not believe, and did not possess sufficiently reliable information to support a reasonable belief, that they had probable cause that Mr. Ellison had committed or attempted to commit a forcible felony.

46.     Upon information and belief, Mr. Ellison did not commit, nor did he attempt to commit, a forcible felony prior to the chase.

47.     Upon information and belief, Officers Kane and Hernandez did not believe, and did not possess sufficiently reliable information to support a reasonable belief, that Mr. Ellison possessed a deadly weapon.

48.     Upon information and belief, Mr. Ellison did not possess a deadly weapon during the vehicular pursuit.

49.     Despite the absence of any information or reasonable belief that would justify a high-speed pursuit according to their own directives, Officers Kane and Hernandez undertook a high-speed chase in a residential and densely populated area of Philadelphia during morning rush hour, even though such a pursuit posed a clear and significant risk to bystanders and motorists, including Ms. Martinez.

50.     By pursuing Mr. Ellison in a residential and densely populated area during morning rush hour, Officers Kane and Hernandez precipitated and continued a high-speed chase that caused Mr. Ellison to strike Ms. Martinez' vehicle. But for the conduct of Officers Kane and Hernandez, Mr. Ellison to strike Ms. Martinez' vehicle, and consequently, Ms. Martinez would not have died.

Case ID: 220901284

51.    Officers Kane and Hernandez's conduct was a substantial factor and/or direct and proximate cause of his vehicle striking Ms. Martinez's vehicle and her harm resulting therefrom, including her death.

52.    By engaging in an unjustified high-speed police pursuit in a residential and densely populated area during morning rush hour, Officers Kane and Hernandez affirmatively used their authority as state actors to create and perpetuate a known and obvious danger to Ms. Martinez, which rendered Ms. Martinez vulnerable to a known, unsafe situation, within the meaning of the state-created danger doctrine under Section 1983 and its progeny.

53.    Defendants, Officer Kane, Officer Hernandez, and the City of Philadelphia, acting under the color of state law, affirmatively caused Plaintiff's Decedent, Virgen Martinez, to be deprived of the rights, privileges, and immunities granted to Ms. Martinez by the Constitution.

54.    By fleeing from police at a high rate of speed, in excess of the posted speed limits, during morning rush hour, despite police operating a marked cruiser and activating their lights and sirens, and illegally entering the intersection of Frankford Avenue and East Allegheny Avenue, Defendant Ellison negligently and recklessly caused his vehicle to strike Ms. Martinez's vehicle.

55.    Defendant Ellison operated his vehicle in a reckless and unsafe manner, and his negligence and recklessness was a substantial factor and/or direct and proximate cause of his vehicle striking Ms. Martinez's vehicle and her harm resulting therefrom, including her death.

56.    As a direct and proximate result of all of the Defendants' conduct, Ms. Martinez was caused to suffer the following:

    a.    Traumatic musculoskeletal and orthopedic injuries;

    b.    Traumatic brain injury;

    c.    Altered level of consciousness;

Case ID: 220901284

d.  Pain and suffering;

e.  Emotional distress;

f.  Mental anguish;

g.  Disfigurement;

h.  Loss of life's pleasures;

i.  Other serious and severe injuries, the exact nature of which are unknown to Plaintiff at this time;

j.  Untimely death;

k.  Loss of care, guidance and tutelage;

l.  all damages allowable under the Survival Act, 42 Pa. C.S.A. §8302, the applicable Rules of Civil Procedure and the decisional law interpreting the Survival Act, including damages for lost earnings of Virgen Martinez between the time of her injury and her death, her total estimated future earning power less her cost of personal maintenance, and/or pain and suffering endured by Virgen Martinez prior to her death, including, but not limited to, physical pain and suffering, mental pain and suffering, mental suffering, loss of life's pleasures, disfigurement, and humiliation; and

m.  all damages allowed under the Wrongful Death Act, 42 Pa. C.S.A. §8301, the applicable Rules of Civil Procedure and all decisional law interpreting the Wrongful Death Act, including damages for medical, funeral, and burial expenses, expenses of administration, monetary support Virgen Martinez would have provided during her lifetime, the value of services provided or which could have

11

been expected to have been performed in the future by Virgen Martinez, and all

pecuniary losses suffered as a result of Virgen Martinez' death.

57.     Accordingly, Plaintiff, Joshua Otero, Administrator of the Estate of Ms. Martinez,

brings this civil action against Defendants, pursuant to 42 U.S.C. § 1983 and Pennsylvania state

law, and seeks all appropriate damages and remedies cognizable by law.

### COUNT I: CIVIL RIGHTS – 42 U.S.C. § 1983

**Plaintiff v. Officer Kane, Officer Hernandez,
City of Philadelphia, and John Does Nos. 1-10**

58.     The preceding paragraphs and allegations are incorporated as though fully set forth

herein.

59.     Defendants Officers Kane and Hernandez were police officers employed by the

City of Philadelphia to enforce Pennsylvania state law and were acting under the color of state law

pursuant to that authority at all times relevant to this litigation. Therefore, they are subject to suit

pursuant to 42 U.S.C. § 1983 for the actions they undertook while acting under the color of state

law.

60.     Defendants, John Does 1-10, is a fictious designation for individual(s) who were

employees, servants and/or agents of the City of Philadelphia, including but not limited to any

officer, supervisor, dispatcher, and/or other individual, who was involved in any aspect of the

police chase at issue.

61.     Defendants' conduct, as set forth above and herein, evinces a state-created danger.

62.     These events did not present Defendants with a hyper-pressurized environment, a

true exigency, or a situation requiring hurried deliberation. Defendants had time to consider

whether to engage in the inherently risky behavior described above.

12

63.    By engaging in an unjustified high-speed pursuit in a residential and densely populated area, during morning rush hour, while driving the opposite direction on a one-way street, without justification, Defendants consciously disregarded a great risk of serious harm to the safety, bodily integrity, well-being, liberty, and substantive due process rights of Plaintiff's Decedent, Virgen Martinez.

64.    By engaging in an unjustified high-speed pursuit in a residential and densely populated area, during morning rush hour, while driving the opposite direction on a one-way street, without justification, Defendants were deliberately indifferent to the safety, bodily integrity, well-being, liberty, and substantive due process rights of Plaintiff's Decedent, Virgen Martinez.

65.    By engaging in an unjustified high-speed pursuit in a residential and densely populated area, during morning rush hour, while driving the opposite direction on a one-way street, without justification, Defendants actions constituted an intent or purpose to cause harm to the public, including Plaintiff's Decedent, Virgen Martinez.

66.    Defendants acted in conscious disregard of the substantial and unjustifiable risk of causing harm to Ms. Martinez and their conduct was so egregious as to shock the conscience.

67.    Defendants' conduct, as set forth above, demonstrates that the harm caused to Plaintiff's Decedent was a foreseeable and a fairly direct result of Defendants' conduct.

68.    Defendants' conduct, as set forth above, demonstrates that Defendants unreasonably and unjustifiably placed Plaintiff's Decedent in a foreseeably dangerous position.

69.    Defendants' conduct, as set forth above, demonstrates that Defendants affirmatively created an opportunity for harm to Plaintiff's Decedent that otherwise would not have existed. Plaintiff's Decedent was rendered more vulnerable to the danger than had Defendants not acted at all.

13

70.    At all times relevant to this litigation, Defendants were aware that Plaintiff's Decedent had a clearly established constitutional right to bodily integrity and a right to be free of the state created danger described herein.

71.    As a direct and proximate result of Defendants' unreasonable, unjustifiable, and unconstitutional conduct, Plaintiff suffered the aforementioned harms, including Ms. Martinez's injuries and untimely death.

72.    Defendants' conduct, as set forth herein, violated Ms. Martinez's rights as guaranteed by the United States Constitution, capable of legal remedy under 42 U.S.C. § 1983.

73.    At all relevant times, Defendants, Officers Kane and Hernandez were the employees, servants and/or agents of the City of Philadelphia, therefore, rendering the City of Philadelphia vicariously liable for their aforementioned actions.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Officer Kane and Officer Hernandez, John Does Nos 1-10, and the City of Philadelphia, for compensatory and punitive damages as indicated above, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages, and costs.

## COUNT II: CIVIL RIGHTS – 42 U.S.C. § 1983 (*Monell* Claim)

### Plaintiff v. City of Philadelphia

74.    The preceding paragraphs and allegations are incorporated as if fully set forth herein.

75.    The City of Philadelphia, as a local government, qualifies as a "person" subject to direct liability under 42 U.S.C. § 1983.

76.    At all times relevant to this litigation, the City of Philadelphia acted under color of state law.

Case ID: 220901284

77.     At all times relevant to this litigation, the City of Philadelphia was a policymaker, whose pronouncements were given the effect of state law.

78.     Upon information and belief, the Philadelphia Police Department's Directive 9.4 related to Vehicular Pursuits was last updated on June 16, 2016.

79.     At the time of this incident, the City of Philadelphia maintained and promulgated a policy, directive, and/or custom and practice governing police pursuits, which resulted in Officers Kane and Hernandez engaging in an unjustified and hazardous high-speed chase in a residential and densely populated area during morning rush hour, thereby causing the violation of Ms. Martinez's rights under the Constitution, 42 U.S.C. 1983; *Monell v. Dep't of Soc'l Serv's*, 436 U.S. 658 (1978), and their progeny.

80.     The City of Philadelphia's maintaining and promulgating an inadequate policy directive, practice, and/or custom governing police pursuits was a moving force behind the unconstitutional harm done to Plaintiff's Decedent.

81.     At the time of this incident, the City of Philadelphia failed to adequately train Philadelphia Police Department officers, including Officers Kane and Hernandez, in the conduct of police pursuits, which resulted in Officers Kane and Hernandez engaging in an unjustified and hazardous high-speed chase in a residential and densely populated area during morning rush hour, thereby causing the violation of Ms. Martinez's rights under the Constitution, 42 U.S.C. 1983; *Monell v. Dep't of Soc'l Serv's*, 436 U.S. 658 (1978), and their progeny.

82.     The City of Philadelphia's failure to properly train its police officers in police pursuits, including Officers Kane and Hernandez, was a moving force behind the unconstitutional harm done to Plaintiff's Decedent.

Case ID: 220901284

83.     As a direct and proximate result of Defendant's unreasonable, unjustifiable, and unconstitutional conduct, Plaintiff suffered the aforementioned harms, including Ms. Martinez' injuries and untimely death.

**WHEREFORE**, Plaintiff demands judgment against Defendant, City of Philadelphia, for compensatory and punitive damages as indicated above, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages, and costs.

## COUNT III: NEGLIGENCE

### Plaintiff v. City of Philadelphia, Officer Kane, Officer Hernandez, And John Does Nos. 1-10

84.     The preceding paragraphs and allegations are incorporated as if fully set forth herein.

85.     At all times relevant to this litigation, Officers Kane and Hernandez were acting within the course and scope of their employment as officers of the Philadelphia Police Department.

86.     Defendants, John Does 1-10, is a fictious designation for individual(s) who were employees, servants and/or agents of the City of Philadelphia, including but not limited to any officer, supervisor, dispatcher, and/or other individual, who was involved in any aspect of the police chase at issue.

87.     At all times relevant to this litigation, the police cruiser that was operated by Officers Kane and Hernandez was under the control of the City of Philadelphia through the Philadelphia Police Department.

88.     At all times relevant to this litigation, Officers Kane and Hernandez owed a duty of reasonable care to foreseeable persons, including Virgin Martinez, to operate their vehicle in a reasonable manner under the circumstances.

16

Case ID: 220901284

89.     As set forth herein, Officers Kane and Hernandez breached this duty by engaging in a reckless high-speed pursuit of Mr. Ellison in a densely populated area at or around 8:30AM.

90.     As a direct and proximate result of the breach of the duty of care Officers Kane and Hernandez owed to Ms. Martinez, Mr. Ellison's vehicle violently collided with that of Ms. Martinez, resulting in her suffering and untimely death.

91.     The conduct of Officers Kane and Hernandez was a substantial factor and/or direct and proximate cause in bringing about the harm done to Plaintiff's Decedent, Ms. Martinez.

92.     The City of Philadelphia is a local agency for purposes of Pennsylvania's Political Subdivision Tort Claims Act. 42 PA. CONS. STAT. § 8501.

93.     The conduct of Officers Kane and Hernandez is covered by an exemption to the immunities granted by Pennsylvania's Political Subdivision Tort Claims Act, namely, the exception for vehicle liability codified at 42 PA. CONS. STAT. § 8542(a)(2), and they are therefore directly liable for the injuries and harms caused to Plaintiff as described above.

94.     As the Officers' conduct is exempted from immunity, and they were acting within the scope of their employment, the City of Philadelphia is vicariously liable for their conduct as their employer under vicarious liability, employment, agency, and/or *respondeat superior*.

95.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered the aforementioned harm, including Ms. Martinez' injuries and untimely death.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Officer Kane, Officer Hernandez, John Does Nos. 1-10, and the City of Philadelphia, for compensatory and punitive damages as indicated above, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages, and costs.

17

## COUNT IV: NEGLIGENCE

### Plaintiff v. Tahir Ellison

96.     The preceding paragraphs and allegations are incorporated as if fully set forth herein.

97.     At all times relevant to this litigation, Tahir Ellison operated a 2008 Kia Sportage that eventually collided into Ms. Martinez's vehicle, the Chevrolet Malibu.

98.     At all times relevant to this litigation, Mr. Ellison owed a duty of reasonable care to Virgin Martinez to operate his vehicle in a reasonable manner under the circumstances.

99.     As set forth herein, Mr. Ellison breached this duty by recklessly fleeing from police, who had activated their lights and sirens.

100.    As set forth herein, Mr. Ellison breached this duty by recklessly driving at a high rate of speed, in excess of posted speed limits, in a densely populated area during morning rush hour.

101.    As set forth herein, Mr. Ellison breached this duty by recklessly fleeing from police at a high rate of speed in excess of posted speed limits in a densely populated area during morning rush hour.

102.    As set forth herein, Mr. Ellison breached this duty by illegally entering the intersection at Frankford Avenue and East Allegheny Avenue.

103.    As set forth herein, Mr. Ellison breached this duty by illegally entering the intersection at Frankford Avenue and East Allegheny Avenue at a high rate of speed, in excess of posted speed limits.

Case ID: 220901284

104.    As a direct and proximate result of these breaches of the duty of care Defendant Ellison owed to Ms. Martinez, Defendant Ellison's vehicle violently collided with that of Ms. Martinez, resulting in her suffering and untimely death.

105.    Defendant Ellison's conduct was a substantial factor and/or direct and proximate cause in bringing about the harm done to Plaintiff's Decedent, Ms. Martinez.

106.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered the aforementioned harms, including Ms. Martinez' injuries and untimely death.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Tahir Ellison, for compensatory damages and punitive damages as indicated above, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages, and costs.

## FIRST CAUSE OF ACTION – WRONGFUL DEATH ACT

### Plaintiff v. All Defendants

107.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

108.    Plaintiff, as Administrator of the Estate of Virgen Martinez, brings an action on behalf of Virgen Martinez's beneficiaries, under the Pennsylvania Wrongful Death Act, 42 PA. CONS. STAT. § 8301.

109.    Under the Wrongful Death Act, Virgen Martinez left the following surviving beneficiaries who may be entitled to recover damages: Joshua Otero, Jasmine Aviles, Felix Gonzalez and Jennifer Gonzalez.

110.    As a result of the conduct of all Defendants set forth herein, Virgen Martinez was caused serious injuries and death, entitling her beneficiaries to damages under the Wrongful Death Act, including, but not limited to, the loss of the monetary support that decedent would have provided to her beneficiaries during the decedent's lifetime, including, but not limited to, earnings,

19

Case ID: 220901284

maintenance, support; services rendered or which could have been expected to have been performed in the future by decedent, and loss of consortium, comfort, society, guidance, and tutelage.

    **WHEREFORE**, Plaintiff, as Administrator of the Estate of Virgen Martinez, demands judgment against all Defendants for the full measure of damages cognizable under the Pennsylvania Survival Act and its interpretive law.

**SECOND CAUSE OF ACTION - SURVIVAL ACT**

**Plaintiff v. All Defendants**

    111.    The preceding paragraphs and allegations are incorporated as if fully set forth herein.

    112.    Plaintiff, as Administrator of the Estate of Virgen Martinez, brings this action on behalf of the survivors of Ms. Virgen Martinez, under the Pennsylvania Survival Act. 42 PA. CONS. STAT. § 8302.

    113.    Virgen Martinez left the following heirs who may be entitled to share in her estate: Joshua Otero, Jasmine Aviles, Felix Gonzalez, and Jennifer Gonzalez.

    114.    As a result of the conduct of all Defendants, as set forth above, Virgen Martinez was caused grievous injuries and death. The beneficiaries of her Estate are therefore entitled to all of the damages recoverable under the Pennsylvania Survival Act, including, but not limited to: the value of the physical pain and suffering, for embarrassment, disfigurement, humiliation, mental pain and suffering and fright, Ms. Martinez experienced immediately before her death; all pecuniary losses suffered by the Estate as a result of her death, including all loss of income, earnings, retirement income and benefits, and Social Security income, until death, as a result of

Case ID: 220901284

decedent's death; and the total amount that decedent would have earned between today and the

end of her life expectancy, including the total amount of future lost earnings and earning capacity

**WHEREFORE**, Plaintiff, on behalf of the Estate of Virgen Martinez, demands judgment

against all Defendants, the full measure of damages cognizable under the Survival Act of the

Commonwealth of Pennsylvania and its interpretive law.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury as to all counts and all issues raised by this Complaint.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

BY:   *s/James J. Waldenberger, Esquire*
SHANIN SPECTER, ESQUIRE
JAMES J. WALDENBERGER, ESQUIRE
HELEN A. LAWLESS, ESQUIRE
ID. Nos. 40928/83837/327249
1525 Locust Street
Philadelphia, PA 19102
(215) 772 -1000/ fax: (215) 772-1359
shanin.specter@klinespecter.com
james.waldenberger@klinespecter.com
helen.lawless@klinespecter.com
*Attorneys for Plaintiff*

Dated:  September 12, 2022

Case ID: 220901284

# **Verification**

I, Joshua Otero, hereby verify that I am the Plaintiff in this action and that the foregoing Complaint is based upon information that I have furnished to my counsel and information that has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of the affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsifications to authorities.

Date:    09/14/2022

Joshua Otero

# Exhibit A

Case ID: 220901284

# Office of the Register of Wills of Philadelphia County, Pennsylvania

File #: A4385-2022

**Commonwealth of Pennsylvania**

**County of Philadelphia**
} ss.

I, **TRACEY L. GORDON,** Register for the Probate of Wills and Granting Letters of Administration in and for the County of Philadelphia, in the Commonwealth of Pennsylvania

DO HEREBY CERTIFY AND MAKE KNOWN That on the ____24th____ day of __August__

in the year of our Lord __2022__            **LETTERS OF ADMINISTRATION**

on the Estate of __VIRGEN DELCARMEN MARTINEZ__

Deceased, were granted unto __JOSHUA OTERO__

having first been qualified well and truly to administer the same. And I further certify that no revocation of said Letters appears of record.

Date of death____11/19/2020____

Given under my hand and seal of office, this __24th__ day of __August__                    , 20 __22__



*Deputy Register*

**NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL**

10-14 (Rev. 3/08)

Case ID: 220901284

# Exhibit B

 **PHILADELPHIA POLICE DEPARTMENT      DIRECTIVE 9.4**

| Issued Date: 12-31-08 | Effective Date: 12-31-08 | Updated Date: 06-16-16 |
|---|---|---|

**SUBJECT:   VEHICULAR PURSUITS**
**PLEAC 4.2.1, 4.2.2**

---

1.  **POLICY AND PURSUIT JUSTIFICATION**

    A.  Policy

        1.  The primary consideration when participating in or supervising any pursuit is the safety and welfare of the public, other officers, as well as the suspect(s). Every officer and supervisor must always weigh the benefits of immediate capture with the risks inherent to the pursuit itself.

    B.  Justification for Initiating a Vehicular Pursuit

        1.  An officer is justified in initiating a vehicular pursuit only when they are:

            a.  In close proximity to a suspect vehicle and believes a pursuit is necessary to prevent the death or serious bodily injury of another person, or

            b.  In close proximity to a suspect vehicle and believes BOTH:

                1)  The pursuit is necessary to effect the arrest or prevent escape, <u>AND</u>

*1              2)  The officer has <u>probable cause</u> to believe that the person being pursued has committed or attempted a forcible felony OR, has <u>probable cause</u> to believe that the person being pursued possesses a deadly weapon, other than the vehicle itself.

| REDACTED - LAW ENFORCEMENT SENSITIVE |
|---|

---

2.  **DEFINITIONS**

    A.  <u>Vehicular Pursuit</u> -  The use of a motor vehicle to chase, follow, or go after a vehicle that has refused to stop.

**DIRECTIVE 9.4 - 1**

Case ID: 220901284

B. <u>Forcible Felony</u> -  A felony involving actual or threatened serious bodily injury, which include:

Definitions Continued:

1.  Murder,
2.  Voluntary Manslaughter,
3.  Arson Endangering Persons, and
4.  Aggravated Assault Causing Serious Bodily Injury

The following felonies shall also be classified as "Forcible" when their commission includes actual or threatened force.  These include:

1.  Rape,
2.  Involuntary Deviate Sexual Intercourse,
3.  Robbery, and
4.  Kidnapping.

C. <u>Deadly Weapon</u> -  Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury [18 Pa. C.S. 2301].

*5       **NOTE:**  For the purposes of this directive, the suspect vehicle is excluded as a deadly weapon regardless of crime committed.

D. <u>Serious Bodily Injury</u> - Bodily injury, which creates a substantial risk of death, or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ [18 Pa. C.S. §2301].

E. <u>Marked Radio Patrol Sedan</u> – Standard four door marked police vehicle equipped with sirens and overhead lights, such as but not limited to District Patrol Vehicles (RPC), Highway Patrol Vehicle, Narcotics Vehicle, etc.

## 3.    GENERAL PURSUIT PROCEDURES AND GUIDELINES

A. Acknowledgment of a pursuit must be made by the District Patrol Supervisor or Police Radio.

B. If no District Patrol Supervisor acknowledges, Police Radio will assign a Supervisor to monitor and control the pursuit.  If the assigned Supervisor fails to acknowledge Police Radio, the Police Radio Room Supervisor will terminate the pursuit.

**DIRECTIVE 9.4 - 2**

Case ID: 220901284

C. If a pursuit is initiated by a Special Unit and a Special Unit Supervisor is not available, Police Radio will assign the pursuit to a District Patrol Supervisor wherein the pursuit is happening.

D. If no justification for the pursuit is given by the initiating unit over Police Radio, it shall be the responsibility of all supervisors on the specific radio band, including the Police Radio Room Supervisor, to immediately terminate the pursuit. Also, any Supervisor is responsible for terminating a pursuit if they believe it has become too dangerous. The decision to terminate shall be final and not be subject to being countermanded.

E. A District Patrol Supervisor assigned to the area in which the pursuit is happening may, based upon his or her knowledge of the District, override any other outside supervisor monitoring and controlling the pursuit.

   **NOTE**: An "outside supervisor" is any supervisor not assigned to the district wherein the pursuit is happening.

F. During a pursuit, no more than two (2) marked radio patrol sedans will pursue a suspect vehicle (i.e. only the Primary and Secondary Units are permitted to engage in a pursuit and that no other vehicles will "caravan" behind the Secondary Unit).

G. Only sworn personnel may engage in a pursuit.

H. All other available sworn personnel (i.e. other than the Primary Unit, Secondary Unit, and Assigned Pursuit Supervisor) should be monitoring police radio and be prepared to stop or divert pedestrian or vehicular traffic that may be in the path of an oncoming pursuit in the areas of assignment. (e.g. Stopping cross traffic at a major intersection in the oncoming direction of a pursuit, etc.)

I. To lessen the possibility of a collision should the fleeing vehicle suddenly stop or change direction, a "safe distance" should always be maintained between the pursued vehicle, the Primary Unit, and Secondary Unit. A minimum of five (5) car lengths should always be maintained during any pursuit. However, a greater distance may be necessary based upon the speed of the pursuit, road and weather conditions, the suspect vehicle's behavior (i.e. how the vehicle is being operated, etc.), the Department's vehicle characteristics, officer's driving experience/capabilities, or any other circumstances that may exist.

J. All marked radio patrol sedans engaged in a pursuit must have, and will operate the police vehicle with emergency equipment activated continuously throughout the pursuit. This includes both light bars and red/blue lights and sirens.

   **NOTE**: Sworn personnel are reminded to use extreme caution when approaching any intersection during a pursuit and only proceed if clear of both vehicles and pedestrians.

**DIRECTIVE 9.4 - 3**

Case ID: 220901284

K. During a pursuit, sworn personnel involved will not switch to another radio band should the pursuit enter another division or jurisdiction. If radio contact is lost for any reason, the pursuit shall be terminated.

L. Once the Secondary Unit arrives to assist, the main function of the Primary Unit is the apprehension of the fleeing suspect(s). The Secondary Unit's main functions are as communications for and backup to the Primary Unit.

M. Only the Primary Unit, Secondary Unit, and the Directing Supervisor may leave their assigned area in response to the pursuit unless ordered not to do so by a higher-ranking officer. No other units may leave their assigned area unless ordered to do so.

\*3     N. In all inter-jurisdictional pursuits, the following actions will be taken by all Philadelphia Police personnel: (PLEAC 4.2.1)

  1. Sworn personnel in fresh and continuous pursuit may NOT pursue outside of the boundaries of Philadelphia unless permission is granted by a higher ranking supervisor.

  2. The initial pursuing officer will notify Police Radio when it is likely that a pursuit will continue into a neighboring jurisdiction. The exception is when the secondary unit arrives and takes over communications.

  3. Police Radio will notify the neighboring jurisdiction of the pursuit as soon as possible.

  4. When a pursuit is initiated by a law enforcement agency of another jurisdiction, Police Radio will notify the Patrol Supervisor who will immediately inquire into the circumstances surrounding the pursuit and what assistance is required by the pursuing agency,

  5. Sworn personnel will not engage in pursuits initiated by other law enforcement agencies unless in accordance with all provisions of this directive. In the districts wherein a pursuit has been initiated by another law enforcement agency, Police Radio will assign the relevant District Patrol Supervisor to monitor and control Philadelphia Police Department personnel.

  6. If an arrest is made outside of Philadelphia, but within the Commonwealth of Pennsylvania, the officer will transport the suspect(s) back to the Divisional Detective Headquarters. If an arrest occurs across any state line, the suspect(s) must go through the extradition procedures before being returned to Philadelphia.

**DIRECTIVE 9.4 - 4**

O. Fleeing vehicles will not be stopped under any circumstances by the following techniques:

   1. Boxing-In – Surrounding the fleeing vehicles with police vehicles, which are then slowed to a stop with the fleeing vehicle.

   2. Ramming – The deliberate act of hitting a fleeing vehicle with a police vehicle for the purpose of forcing the fleeing vehicle off the road or into a fixed object.

   3. Roadblocks - The use of barricades, vehicles or other obstructions across a roadway to stop a fleeing vehicle.

\*3   4. Pursuit Termination Devices – The use of any pursuit termination or vehicle immobilization device (i.e, stop sticks, spike strips, etc.). (PLEAC 4.22)

\*3  P. Vehicles, other than a marked Radio Patrol Car (i.e., unmarked cars, EPW, SUV, Motorcycle, etc.) shall not, barring exigent circumstances, initiate a vehicle pursuit. However, if a pursuit is initiated based upon exigent circumstances, the operators of these types of vehicles shall relinquish the position as Primary Vehicle to the first responding marked RPC and withdraw from the pursuit immediately.

Q. Police vehicles being used to transport any non-sworn personnel, including but not limited to, prisoners, witnesses, recruits, police explorers, or any "ride-along" shall not engage in a pursuit. Additionally, any unit containing a canine shall not engage in a pursuit.

R. Sworn personnel will immediately terminate any pursuit if the suspect vehicle enters an interstate highway or divided roadway in the wrong direction.

> REDACTED - LAW ENFORCEMENT SENSITIVE

T. Barring extenuating circumstances, all sworn personnel involved in a pursuit in any manner will complete and submit the relevant portion of both Pursuit Memoranda (city and state) found in Appendix "A" of this directive within three (3) days.

---

## 4   SPECIFIC RESPONSIBILITES

A. Initiating/Primary Unit

   1. Determine the necessity of commencing or terminating a pursuit by considering:

     a. Whether justification to initiate the pursuit exists (refer to Section 1-B),
     b. Whether the suspect's identification and address are known, thereby making available an alternate means of arrest (e.g. via an arrest warrant),

**DIRECTIVE 9.4 - 5**

    c.  The weather and road conditions,
    d.  Location and population density (vehicular and pedestrian),
    e.  The capabilities and characteristics of the department vehicle,
    f.  The officer's own driving capabilities,
    g.  The officer's familiarity with the pursuit area,
    h.  Any other extraordinary circumstances or conditions (e.g. the proximity to school zones, playgrounds, shopping centers, etc.) and
    i.  The speed and control of the suspect vehicle.

2.  If a pursuit is initiated, immediately inform the radio dispatcher of:

    a.  The fact that a pursuit has been initiated, along with the justification,
    b.  The initial location, direction, and estimated distance to the suspect vehicle,
    c.  The approximate speed of both the suspect and police vehicles,
    d.  The vehicle description and, if possible, license information and a physical and clothing description of the occupants along with approximate ages,
    e.  The continuous progress of the pursuit and if headed towards another district, division, or jurisdiction,
    f.  Upon arrival of a Secondary Unit, relinquish communication responsibilities to the Secondary Unit.

3.  Continuously evaluate the benefits of an immediate capture against the safety of the public, other officers and the suspect.  An officer can self-terminate a pursuit at any time.

4.  If ordered by a supervisor to relinquish the Primary Unit duties to another radio patrol sedan, immediately withdraw from the pursuit, return to area of assignment, and prepare to complete the relevant portion of the Pursuit Memoranda found in Appendix "A" of this directive.

5.  Apprehend the suspect(s), or by ensuring that only the proper amount of force is used to make any arrests consistent with the guidelines in directive 10.2, "Use of Moderate/Limited Force".  If the vehicle is stopped and the occupant(s) appear to barricade themselves inside the vehicle, ensure the provisions found in Directive 10.7, "Crisis Response/Critical Incident Negotiations," regarding barricaded persons are implemented.

6.  If the Initiating/Primary Unit loses sight of the suspect vehicle, terminate the pursuit immediately and notify Police Radio.  Begin a search of the area where suspect vehicle was last seen as directed by the responding supervisor.

7.  If any supervisor terminates the pursuit, disengage from the pursuit immediately, safely stop and park the vehicle, notify police radio of location and odometer mileage, update patrol log, and await the arrival of a supervisor.

Case ID: 220901284

> REDACTED - LAW ENFORCEMENT SENSITIVE

    a. Return to a safer driving speed,

    b. Move out of sight of the fleeing vehicle,

    c. Continuously monitor Police radio as to the direction of the fleeing vehicle,

    d. Not renew pursuit of the fleeing vehicle if they should make subsequent visual contact and are in close proximity with it, and

    e. Be prepared for any reports by the flight crew that the fleeing vehicle has stopped and the suspect(s) have fled on foot.

9. If a pursued vehicle is found unattended it should be guarded for prints in an attempt to identify and apprehend the driver and the occupants.

**B. Secondary Unit**

1. Upon joining the Primary Unit, acknowledge to Police Radio as the "Secondary Unit".

2. Maintain visual contact with the primary unit and assume all communication responsibilities such as, reporting the continuous progress of the as indicated in Section 4-A-2, c through f of this directive.

3. If ordered by a supervisor, relinquish the Secondary Unit duties to another vehicle, immediately withdraw from the pursuit, and return to area of assignment.

4. Do not pass the Primary Unit unless requested to do so by that Unit or if other conditions exist, such as mechanical malfunction, etc.

5. Back-up and support the Primary Unit officer(s) consistent with Section 4-A-5 of this directive.

6. If either the primary unit or any supervisor/commander terminates the pursuit, immediately cease the pursuit.

> REDACTED - LAW ENFORCEMENT SENSITIVE

8. If a pursued vehicle is found unattended it should be guarded for prints in an attempt to identify and apprehend the driver and the occupants.

**C. Assigned Pursuit Supervisor shall:**

1. Direct and control the pursuit and apprehension efforts by:

**DIRECTIVE 9.4 - 7**

Case ID: 220901284

a. Evaluating the Primary/Initiating Unit's justification for commencing and continuing the pursuit,

b. Immediately terminating the pursuit, if necessary, considering all the facts and circumstances including, but not limited to, those factors identified in Section 4-A-1 of this directive,

| REDACTED - LAW ENFORCEMENT SENSITIVE |
|:---:|

d. Ensuring the Primary Unit and the Secondary Unit withdraw from the pursuit if Aviation Unit assumes the pursuit and that pursuit and that they comply with the provisions of Section 4-A-8 and 4-B-7 of this directive respectively.

e. Monitoring all radio transmissions, and ensuring Police Radio is kept informed of location, direction, speed, weather and road conditions, vehicle and pedestrian traffic, etc.

f. Limiting the involvement and radio use by other units.

g. Coordinating other units to respond to strategic locations to possibly apprehend the suspects,

h. Arriving at the scene of any apprehension as soon as possible to ensure the provisions of Directive 10.2, regarding the use of force and, if necessary, Directive 10.7 regarding barricaded persons are strictly observed.

2. If the pursuit was terminated by any supervisor, meet the Primary Unit and Secondary Units and inspect the vehicle odometers, sign officer's log noting location, odometer mileage, and mileage recorded by Police Radio.

3. After any pursuit, if appropriate, make sure officers have sufficient time to calm down and regain their composure before returning to patrol.

4. Supervisors must be proactive at the end of the pursuit to ensure that arrests are made in accordance with departmental policy. Supervisors will be held accountable if they fail to take appropriate action.

5. If a pursued vehicle is found unattended it should be guarded for prints in an attempt to identify and apprehend the driver and the occupants.

D. Police Radio Responsibilities

1. Police Radio Dispatcher

a. When a Police Radio Dispatcher is notified that an officer is involved in a vehicular pursuit, the dispatcher will:

**DIRECTIVE 9.4 - 8**

Case ID: 220901284

1) Immediately notify a Radio Room Supervisor and 'J' band of the pursuit,

2) Contact and assign the initiating officer's direct supervisor or an available district supervisor to the pursuit, who shall then direct and control the pursuit and any apprehension efforts,

> REDACTED - LAW ENFORCEMENT SENSITIVE

4) Monitor and broadcast the relevant information received from the Initiating/Primary Unit,

5) Once a Secondary Unit has joined in the pursuit, use the Secondary Unit as the communications vehicle unless the Primary Unit is a two-officer vehicle,

6) If the pursuit is terminated by any supervisor, request the location and odometer mileage from the terminated unit and dispatch a supervisor to that location,

7) Assign a separate District Control Number for every pursuit.

2. Radio Room Supervisor Responsibilities

 a. Upon being notified by a Police Dispatcher of a pursuit, the Radio Room Supervisor:

1) Will physically respond to the involved console and begin monitoring the pursuit ensuring all responsibilities of the Police Dispatcher in Section 4-D-1 are completed,

2) If no justification for the pursuit is given by the initiating unit or if the initiating unit's supervisor or available district supervisor fails to respond to Police Radio, will immediately terminate the pursuit,

   NOTE: If a pursuit is terminated because the initiating unit's supervisor or available District Supervisor failed to respond, the appropriate supervisor's Commanding Officer, Divisional Inspector and the Regional Operations Command will be notified via a Blackberry message.

3) Ensure the notification of Aviation Unit and their availability.

**DIRECTIVE 9.4 - 9**

Case ID: 220901284

4) When the pursuit results in an auto accident or injury to police or the suspect vehicle, the Pursuit Broadcast Tapes will be forwarded to the appropriate Commanding Officer.

5) Will generate a daily report of all pursuits, along with a printed copy of all radio transmissions of the pursuit, to the appropriate Commanding Officer for immediate action.

REDACTED - LAW ENFORCEMENT SENSITIVE

F.  District/Unit Commanders

1.  Will continuously assess the decisions of the assigned supervisor and take control/action if necessary considering all the facts and circumstances including, but not limited to, the factors identified in Section 4-C-1-b of this directive.

2.  Shall ensure that copies of the Pursuit Memoranda (city and state) found in Appendix "A" of this directive, the Pursuit Report generated by Police Radio and the radio transmissions are forwarded to the appropriate Deputy Commissioner and the Commanding Officer of the Police Academy, Accident Prevention Section within five (5) calendar days of the pursuit date.

*6      3.  The District/Unit Commanders should ensure a copy of the Pennsylvania Police Pursuit Report is forwarded to the Research and Analysis Unit, on the first business day after the pursuit.  The original PSP Report will be submitted with the pursuit packet through the chain of command.  This is further detailed in Appendix "A" page 6, of this directive.

**DIRECTIVE 9.4 - 10**

Case ID: 220901284

    4.  Shall ensure the appropriate actions, up to and including formal disciplinary recommendations (75-18s), are taken against any subordinate who has violated any provision of this directive.

G.  Appropriate Deputy Commissioner

    1.  Shall review the Pursuit Memoranda, the Pursuit Report generated by Police Radio and the radio transmissions to ensure that officers and supervisors comply with the procedures and policies set forth in this directive.

| RELATED PROCEDURES: | Directive 9.7, | Safe Operation of Police Vehicles |
|---|---|---|
| | Directive 10.2, | Use of Moderate/Limited Force |
| | Directive 10.7, | Crisis Response/Critical Incident Negotiations |
| | Disciplinary Code | |

### BY COMMAND OF THE POLICE COMMISSIONER

| FOOTNOTE # | GENERAL # | DATE SENT | REVISION |
|---|---|---|---|
| *1 | 2450 | 01-14-09 | Clarification |
| *2 | 4193 | 01-16-09 | Deletion of 1-B-1-b-3 |
| *3 | 4830 | 08-18-15 | Additions/Changes |
| *4 | 1141 | 09-01-15 | Change |
| *5 | 1023 | 04-29-16 | Changes |
| *6 | 4131 | 06-16-16 | Addition |

**DIRECTIVE 9.4 - 11**

Case ID: 220901284



# PHILADELPHIA POLICE DEPARTMENT    DIRECTIVE 9.4

## APPENDIX "A"

| Issued Date: 12-31-08 | Effective Date: 12-31-08 | Updated Date: 04-29-16 |
|---|---|---|

### SUBJECT: POLICE VEHICLE PURSUIT MEMORANDUM

This memorandum is to be completed regardless of whether or not the violator is apprehended, the length, or duration of the pursuit, or whether or not an accident had taken place.

A copy of the Complaint or Incident Report (75-48) will be included with this memorandum. When available and appropriate, a copy of Accident Report (AA-500 or 75-48C) will accompany it. It is very important that any vehicle accident involving a police vehicle, the fleeing vehicle, any other civilian or city-owned vehicle or any combination thereof ,be described not only in the AA-500 or 75-48C and the 75-48, but also in this Pursuit Memorandum and the Pennsylvania Police Pursuit Report.

\*3/\*4  This memorandum must be submitted through the chain of command for review to the Police
\*5     Academy, Accident Prevention Section within thirty days.  The Police Academy will retain copies of all State Police Pursuit Reports and AA-500 or 75-48Cs.  The Commanding Officer of the initiating district/unit must ensure that the State Police Pursuit Report is sent to the Research and Analysis Unit.

MEMORANDUM

TO      : CHIEF INSPECTOR, TRAINING BUREAU
FROM    :
SUBJECT: PHILADELPHIA POLICE DEPARTMENT PURSUIT MEMORANDUM

DATE OR OCCURRENCE   TIME OF OCCURRENCE_____DAY_____

DISTRICT OF OCCURRENCE ____DIST. CONTROL NUMBER_____

LOCATION PURSUIT INITIATED_____

LOCATION PURSUIT TERMINATED_____

NUMBER OF POLICE UNITS INVOLVED_____

DURATION OF PURSUIT (MINUTES)____DISTANCE (CITY BLOCKS)_____

Case ID: 220901284

JUSTIFICATION FOR PURSUIT AND SPECIFIC VIOLATIONS_____

_____

VIOLATIONS DURING PURSUIT_____

TRAFFIC CONDITIONS (CIRCLE ONE):  HEAVY  MEDIUM  LIGHT  NONE

PEDESTRIAN TRAFFIC (CIRCLE ONE):  HEAVY  MEDIUM  LIGHT  NONE

WEATHER CONDITIONS (CIRCLE ONE):

1 - NO ADVERSE CONDITIONS
2 - RAINING
3 - SLEET, HAIL, FREEZING RAIN
4 - SNOWING
5 - FOG AND SMOKE
6 - RAIN AND FOG

ROAD CONDITIONS (CIRCLE ONE): DRY WET SNOW COVERED ICE COVERED

PRIMARY UNIT   NAME AND RANK OF OFFICER_____

BADGE #_____PAYROLL #---------------------------

DISTRICT OR UNIT/SQUAD AND GROUP___APPOINTMENT DATE___/___/___

RECORDER'S NAME_____BADGE #_____PAYROLL #_____

DISTRICT OR UNIT/SQUAD AND GROUP_____

VEHICLE NUMBER_____TYPE OF POLICE VEHICLE_____

SECONDARY UNIT:  NAME AND RANK OF OFFICER_____

BADGE#_____PAYROLL #_____

DISTRICT OR UNIT/SQUAD AND GROUP_____APPOINMENT DATE___/___/___

RECORDER'S NAME_____BADGE #_____ PAYROLL #_____

DISTRICT OR UNIT/SQUAD AND GROUP_____

VEHICLE NUMBER_____TYPE OF POLICE VEHICLE

**DIRECTIVE 9.4 - 2**
**APPENDIX "A"**

Case ID: 220901284

VIOLATOR'S VEHICLE: MAKE____MODEL_____YEAR_____

COLOR___TAG_____OPERATOR'S NAME_____
DATE OF BIRTH_____ADDRESS_____

CITY/STATE_____

VIOLATOR'S CHARGES_____

OWNER OF VEHICLE_____

PRIMARY OFFICER'S NARRATIVE: Outline the specifics of the pursuit, including justification. (Use 8" x 11" sheet of white paper should additional space be required.

_____

_____

_____

_____

_____

_____

OFFICER'S SIGNATURE_____DATE_____

SECONDARY OFFICER'S NARRATIVE: Outline the specifics of your involvement in the pursuit. (Use 8" x 11" sheet of paper should additional space be required.)

_____

_____

_____

_____

_____

OFFICER'S SIGNATURE_____DATE_____

SUPERVISOR MONITORING PURSUIT: NAME/RANK_____

**DIRECTIVE 9.4 - 3**
**APPENDIX "A"**

Case ID: 220901284

DISPOSITION OF PURSUIT: PURSUIT TERMINATED  YES___  NO___

(IF YES BY WHOM) NAME/RANK_____

REASON FOR TERMINATION: EXPLAIN_____

_____

_____

ANY MOTOR VEHICLE ACCIDENTS AS A RESULT OF THIS PURSUIT? YES__ NO__

(THIS INCLUDES ALL POLICE VEHICLES, THE FLEEING VEHICLE, AND OTHER
CIVILIAN OR CITY-OWNED VEHICLES THAT MAY HAVE BECOME INVOLVED IN
AN ACCIDENT AS A DIRECT OR INDIRECT RESULT OF THE POLICE PURSUIT.)
(IF YES, EXPLAIN AND ATTACH COPY OF THE 75-48, AND WHEN AVAILABLE, AN
AA-500 OR 75-48C)

_____

_____

ANY POLICE OR CIVILIANS INJURED IN A VEHICULAR ACCIDENT AS A RESULT OF
THIS PURSUIT?  YES__ NO__  (IF YES, EXPLAIN AND GIVE EXTENT OF INJURIES.)
_____

_____

ANY POLICE OR CIVILIAN DEATHS AS A RESULT OF THIS PURSUIT?
YES__ NO _____

IF YES, EXPLAIN_____

_____

_____

ANY VIOLATIONS OF DIRECTIVE 41? YES___  NO___

(IF YES, EXPLAIN)_____

_____

Case ID: 220901284

SUPERVISOR'S NARRATIVE: PER DEPARTMENT POLICY, WAS THIS PURSUIT JUSTIFIED?  YES\_\_\_  NO\_\_\_ EXPLAIN AND INCLUDE RECOMMENDATIONS

_____

_____

_____

_____

SUPERVISOR'S SIGNATURE_____BADGE #_____DATE_____

DISTRICT COMMANDING OR COMMAND INSPECTIONS BUREAU COMMENTS:
(Per Department policy, was this pursuit justified?) YES__ NO__

RECOMMENDATIONS_____

_____

_____

_____

COMMANDING OFFICER'S SIGNATURE_____  DATE_____

*5  INSPECTOR'S
RECOMMENDATIONS_____

_____

_____

_____

INSPECTOR'S SIGNATURE_____  DATE_____

*5  CHIEF INSPECTOR'S
RECOMMENDATIONS_____

_____

_____

_____

CHIEF INSPECTOR'S SIGNATURE_____  DATE_____

**DIRECTIVE 9.4 - 5**
**APPENDIX "A"**

Case ID: 220901284

\*5     DEPUTY COMMISSIONER'S
       RECOMMENDATIONS_____

       _____

       _____

       _____

       DEPUTY COMMISSIONER'S SIGNATURE_____  DATE_____

       ACCIDENT PREVENTION SECTION:

       DATE RECEIVED_____BY WHOM_____

       RECOMMENDATIONS:_____

       _____

       _____

       TRAINING BUREAU CHIEF'S ACKNOWLEDGEMENT:
       (Per Department policy, was this pursuit justified?) YES___ NO___

                          _____
                          CHIEF INSPECTOR'S SIGNATURE

                          DATE_____

### PENNSYLVANIA POLICE PURSUIT REPORT

Act 154 of 1994 requires police departments in Pennsylvania to make a record of all vehicle pursuits and to report them to the Pennsylvania State Police. The Pennsylvania State Police is required to collect these reports, and to compile an annual summary of information to be reported to various entities. Completion and submission of this form for all pursuits, which occur on or after January 1, 1996, will ensure compliance with the reporting requirements of Act 154.

The detailed information collected through the use of this form will be used to help identify both positive and negative factors influencing the outcome of vehicular pursuits, validate or refute the merits of pursuit policies and apprehension techniques, and to recognize training successes and deficiencies. It is intended that this will enable police departments throughout the Commonwealth to enhance the safety of their officers and the public they serve.

**DIRECTIVE 9.4 - 6**
**APPENDIX "A"**

Case ID: 220901284

The form should be completed by either the primary pursuing police officer or their supervisor, at the discretion of the individual police department. It has been designed to be completed and read without the need for code sheets or overlays. The form may also be completed by agencies assisting the primary pursuing agency. Forms completed by assisting agencies shall not be submitted to the Pennsylvania State Police.

*3/*4 The Commanding Officer of the initiating district/unit shall ensure that original, completed forms are submitted directly to the Research and Analysis Unit as soon as possible. The Research and Analysis Unit shall submit it to the Pennsylvania State Police, upon receipt from the Commanding Officer of the initiating district/unit. Blank forms may be duplicated as necessary. Only original, completed forms shall be submitted to the Pennsylvania State Police. Copies should be made for your records.

Questions concerning the completion of this report should be directed to:

Pennsylvania State Police
Bureau of Research and Development
1800 Elmerton Avenue
Harrisburg, PA  17110
ATTN: Pursuit Reporting Coordinator
(717) XXX-XXXX

## BLOCK INSTRUCTIONS

1. REPORTING AGENCY:  Enter the name of the reporting agency. For agencies having stations at multiple locations, also list the location.

2. REPORTING OFFICER:  Enter the full name of the individual preparing the report.

3. SIGNATURE:  Self-explanatory.

4. INCIDENT NUMBER:  Enter the Incident Number (or case number, etc.) your agency assigns the incident. If an additional vehicle(s) is actively pursued as part of the same incident, that pursuit shall be reported on a separate form, with a supplemental incident number, e.g., A01123456A.

   PSP: Enter the Incident Number as follows: A01123456, S13123456

5. PURSUIT DATE: Enter the date the pursuit began in the following format:

   010296 for January 2, 1996

6. PURSUIT TIME: Enter the time (24 hour clock) the pursuit began.

7. SUPERVISOR'S INITIALS AND BADGE NO.: Self-explanatory.

Case ID: 220901284

8. JURIS NUMBER:   Enter the Juris Number assigned by the Pennsylvania State Police in the five boxes of the block.  If your department has not been assigned a Juris Number, contact the Pennsylvania State Police, Bureau of Research and Development, Management Information and Uniform Crime Reporting Section, at (717) XXX-XXXX.

   PSP:   Use the appropriate Station Code, preceded by the number 9 (i.e., 91110 would be entered for Greensburg, Station Code 1110).

9. REASON INITIATED:   Mark the choice which best describes the offense or suspected offense for which the officer INITIALLY decided to pursue the vehicle.  If more than one choice applies, mark the most serious.  Use only an offense known or suspected at the time the attempt to stop was initiated.

   EXAMPLE:   If a violator is pursued for a speeding violation, and it is later determined that the vehicle is stolen, then OTHER TRAFFIC should be marked.  If, before attempting to stop the speeder, the officer learns that the vehicle has been reported stolen, then STOLEN OR SUSPECTED should be marked.

   DUI OR SUSPECTED - The driver was known to be or suspected of Driving Under the Influence.

   OTHER TRAFFIC - Any other traffic violation.

   SUMMARY CRIMINAL - Any known or suspected summary criminal offense.

   MISDEMEANOR CRIMINAL - Any known or suspected misdemeanor criminal offens

   FELONY CRIMINAL - Any known or suspected felony criminal offense, except those relating to the vehicle known to be or suspected of being stolen.

   STOLEN OR SUSPECTED - The vehicle is known or suspected to be stolen.

10. TYPE VEHICLE PURSUED:   Mark the choice, which best described the vehicle pursued.

   AUTOMOBILE - Passenger cars and mini-vans regardless of the manner in which they are registered.

   VAN/PICK-UP/SUV - Full size vans, all pick-up trucks, and sport utility vehicles, even though they may be registered as station wagons.

   MOTORCYCLE - All two-wheeled motorcycles, mopeds, motor-driven pedacycles.

**DIRECTIVE 9.4 - 8**
**APPENDIX "A"**

Case ID: 220901284

OTHER - All other vehicles.

11. APPREHENSION: Mark the choice which best describes the apprehension, if any, of the violator.

NONE - VIOLATOR SUCCESSFULLY ELUDED POLICE - Self-explanatory.

NONE - DECISION MADE TO TERMINATE - The pursuit was terminated due to a decision made by the pursuing officer(s) or a supervisor, even though officer(s) were able to continue the pursuit.

NONE - STOPPED, BUT ESCAPED ON FOOT - The pursuit resulted in the violator vehicle being stopped, but the violator escaped on foot.

APPREHENDED DURING PURSUIT - The violator was apprehended during pursuit. This includes during any foot pursuit or search conducted as an immediate continuation of the original pursuit.

DELAYED - AFTER TERMINATION OF PURSUIT - The violator is apprehended after the pursuit is terminated. This includes cases in which the violator is identified through investigation, or if the violator is identified during the pursuit, the decision is made to terminate the pursuit and apprehend the violator at a later time.

12. REASON TERMINATED - Mark the choice which best describes the reason for termination of the pursuit.

PURSUIT DISCONTINUED - Use if the pursuit was terminated by a decision to discontinue.

POLICE ACCIDENT - The pursuit was terminated because the pursuing police vehicle was involved in an accident.

POLICE VEHICLE DISABLED - The pursuit was terminated because the pursuing police vehicle suffered a mechanical failure other than that caused by an accident or collision.

VIOLATOR STOPPED VOLUNTARILY - The violator stopped voluntarily, without the use of road spikes, roadblocks, induced stops, or other apprehension techniques, and surrendered.

VIOLATOR ABANDONED VEHICLE - The violator stopped voluntarily, without the use of road spikes, roadblocks, induced stops, or other apprehension techniques, then fled on foot.

VIOLATOR STOPPED BY COLLISION OR ACCIDENT - The violator was involved in a collision or accident, which terminated the pursuit.

**DIRECTIVE 9.4 - 9**
**APPENDIX "A"**

Case ID: 220901284

VIOLATOR VEHICLE DISABLED - The pursuit was terminated because the violator vehicle suffered a mechanical failure other than that caused by an accident or other police action.

STOPPED BY OTHER POLICE ACTION - The violator was stopped by apprehension techniques other than trailing pursuit, e.g., roadblock, induced stop, etc.

13. COLLISION TYPE: Mark the choices, which describe any collisions occurring during the pursuit.

NO COLLISION – Self-explanatory.

VIOLATOR ACCIDENT - If an accident occurs involving only the violator vehicle.

POLICE ACCIDENT - If an accident occurs involving only a pursuing police vehicle.

UNINVOLVED ACCIDENT - If an accident occurs involving only a vehicle or vehicles not involved in the pursuit, and the accident is a result of the actions of either the violator or police vehicles, e.g., the violator forces an uninvolved vehicle off the road.

VIOLATOR - POLICE ACCIDENT - If an accident occurs involving the violator and pursuing police vehicles.

VIOLATOR - UNINVOLVED ACCIDENT - If an accident occurs involving the violator vehicle and an occupied vehicle not involved in the pursuit.

UNINVOLVED - POLICE ACCIDENT - If an accident occurs involving an occupied vehicle not involved in the pursuit and a pursuing police vehicle.

VIOLATOR - POLICE DEL. INT. (Deliberate intent) - If the violator vehicle was deliberately driven into a police vehicle.

VIOLATOR - UNINVOLVED DEL. INT. - (Deliberate intent) - If the violator vehicle was deliberately driven into an uninvolved vehicle.

POLICE - VIOLATOR LEGAL INTER. (Legal Intervention) - If a police vehicle was deliberately driven into the violator vehicle as an act of legal intervention.

14. APPREHENSION TECHNIQUES:

USED: Mark each apprehension technique used during the pursuit.

END PURSUIT:  Mark one technique most responsible for ending the pursuit, if the violator vehicle was stopped.

**DIRECTIVE 9.4 - 10**
**APPENDIX "A"**

Case ID: 220901284

TRAILING PURSUIT - Following the violator vehicle in an attempt to stop it.

ROAD SPIKES - Road Fangs, Spike Strips, Stop Sticks, or other devices designed to deflate the tires of a pursued vehicle.

PARTIAL ROADBLOCK - A roadblock intended to stop or slow the pursued vehicle while allowing the vehicle to pass through or around the roadblock.

TOTAL ROADBLOCK - A roadblock, which completely blocks the pursued vehicle's path, preventing the vehicle from passing through or around the roadblock without striking the roadblock.

ROLLING ROADBLOCK - One or more police vehicles being driven in front of, and in the same direction as, the pursued vehicle. The police vehicles are then slowed to force the violator vehicle to stop.

OTHER INDUCED STOP - One or more police vehicles being used to force the pursued vehicle to stop. For the purposes of this report, in an induced stop, there is no attempt to make contact with the pursued vehicle.

LEGAL INTERVENTION - For the purposes of this report, deliberately driving a police vehicle into the violator vehicle in an attempt to stop the vehicle.

FIREARMS - Firearms or long guns discharged at the pursued vehicle or driver.

| REDACTED - LAW ENFORCEMENT SENSITIVE |
| --- |

15. NONPURSUIT RELATED CHARGES:  List the charges filed against the operator and occupants of the pursued vehicle, which are not a result of their conduct during the pursuit, if they are apprehended during the pursuit. This includes charges previously filed if the violator is fleeing to avoid their capture or the capture of any occupant of the pursued vehicle and the charge for the offense marked in Block 9. If there are more than four, list the four most serious charges here. Charges filed in another state should be entered as if they were filed in Pennsylvania. Check the appropriate space if there are additional non-pursuit-related charges and list them in the continuation/synopsis.

EXAMPLE:    A violator is the subject of an outstanding warrant for burglary and criminal trespass. During the pursuit, the violator attempts to ram a pursuing police vehicle. The violator is apprehended during the pursuit, and a search of the vehicle, incident to the violator's arrest, reveals illegal drugs. CC3502 and CC3503 would be entered in this block (CC2702, aggravated assault, would be entered under Pursuit Related Charges, and the drug violations would be listed under Other Pursuit Related Charges.)

**DIRECTIVE 9.4 - 11**
**APPENDIX "A"**
Case ID: 220901284

In the first two blocks, enter one of the following codes:

CC - Crimes Code
CS - Controlled Substance, Drug, Device and Cosmetic Act
FW - Fireworks Law
GM - Game Law
LL - Liquor Law
VC - Vehicle Code

In the next four blocks, enter the section number. For violations of the Controlled Substance, Drug, Device, and Cosmetic Act, delete the (a). Section 13(a)30 would be coded as 1330.

16. ROAD SURFACE:   Mark the choice which best described the condition of the road surface during the pursuit.

17. VISIBILITY:   Mark the choice which best described the visibility conditions during the pursuit.

DAY/CLR - Daylight, with no atmospheric obscurement, such as fog, rain, snow, etc.

DAY/OBSC - Daylight, with atmospheric obscurement, such as fog, rain, snow, etc.

DUSK/DAWN/CLR - Dusk or dawn, with no atmospheric obscurement, such as fog, rain, snow, etc.

DUSK/DAWN/OBSC - Dusk or dawn, with atmospheric obscurement, such as fog, rain, snow, etc.

DARK/CLR - Dark, with no atmospheric obscurement, such as fog, rain, snow, etc.

DARK/OBSC - Dark with atmospheric obscurement, such as fog, rain, snow, etc.

18. MISC:

PRIMARY PURSUING AGENCY - Mark this if your agency was the primary pursuing agency during the pursuit.

ASSISTING AGENCY - Mark this if your agency was assisting the primary pursuing agency. Only the primary pursuing agency is required to forward this report to the Pennsylvania State Police.

PSP - This report shall be forwarded in accordance with applicable directives regardless of the status of the Pennsylvania State Police as either the primary pursuing agency or an assisting agency.

**DIRECTIVE 9.4 - 12**
**APPENDIX "A"**

PROBABLE USE DRUGS/ALCOHOL - Mark this if it is suspected that the violator is suspected of being under the influence of drugs or alcohol, regardless of whether charges relating to the use of drugs or alcohol are filed.

PURSUED VEH. OPPOSE TRAFFIC - Mark if the pursued vehicle was driven on a one-way roadway against the normal flow of traffic.

POLICE VEH. OPPOSE TRAFFIC - Mark if any police vehicle actively pursuing the violator was driven on a one-way roadway against the normal flow of traffic.

NOTE: If a police vehicle were driven on a one-way roadway against the normal flow of traffic while not actively pursuing the violator, such as to take a position at a roadblock, this block would not be completed.

19. PURSUIT-RELATED CHARGES:   Mark all the charges resulting from the violator's operation of the pursued vehicle during the pursuit.

20. OTHER PURSUIT RELATED CHARGES:   Enter any other charges resulting from the violator's operation of the pursued vehicle during the pursuit.

21. HIGHWAY:   Mark the type of highway(s) on which the pursuit started, traveled on during the pursuit, and on which the pursuit ended.

22. AREA: Mark the type of area(s) in which the pursuit started, traveled through, and ended.

| | |
|---|---|
| URBAN/BUS | -Urban area or business district |
| SUBURBAN | -Self-explanatory |
| RESIDENTIAL | -Self-explanatory |
| RURAL | -Self-explanatory |

BLOCKS 23 THROUGH 37 - Enter three digits, e.g., enter three as 003, ten as 010, etc.

23. MARKED VEHICLES DIRECTLY INVOLVED:   Enter the number of marked police vehicles directly involved in the pursuit.  Do not include vehicles, which were only utilized in a support role, e.g., roadblocks, etc.

24. UNMARKED VEHICLES DIRECTLY INVOLVED:   Enter the number of unmarked police vehicles directly involved in the pursuit.  Do not include vehicles, which were only utilized in a support role, e.g., roadblocks, etc.

25. VIOLATOR INJURIES:   Enter the number of persons in the violator vehicle who received injuries resulting from vehicular operation during the pursuit.

**DIRECTIVE 9.4 - 13**
**APPENDIX "A"**

Case ID: 220901284

26. POLICE INJURIES:  Enter the number of persons in police vehicles who received injuries resulting from vehicular operation during the pursuit.

27. UNINVOLVED INJURIES:  Enter the number of uninvolved persons who received injuries resulting from vehicular operation during the pursuit.

28. VIOLATOR DEATHS:  Enter the number of persons in the violator vehicle who were killed as a result of vehicular operation during the pursuit.

29. POLICE DEATHS:  Enter the number of persons in police vehicles who were killed as a result of vehicular operation during the pursuit.

30. UNINVOLVED DEATHS:  Enter the number of uninvolved persons who were killed as a result of vehicular operation during the pursuit.

31. VIOLATOR PROPERTY DAMAGE:  Enter the estimated amount of property damage to the violator's vehicle resulting from the pursuit.

32. POLICE PROPERTY DAMAGE:  Enter the estimated amount of property damage to police vehicles resulting from the pursuit.

33. UNINVOLVED PROPERTY DAMAGE:  Enter the estimated amount of property damage to uninvolved property resulting from vehicular operation during the pursuit.

34. NUMBER OF PERSONS IN PURSUED VEHICLE: Self-explanatory.

35. PERSONS IN PURSUED VEHICLE ARRESTED: Self-explanatory.

36. LENGTH OF PURSUIT (MILES): Self-explanatory.

37. TIME ELAPSED DURING PURSUIT (MINUTES): Self-explanatory.

38. VEHICLE: Enter the pertinent information concerning the pursued vehicle.

39. VIOLATOR: Enter the pertinent information concerning the pursued subject.

40. CONTINUATION/SYNOPSIS: Self-explanatory.


PENNSYLVANIA POLICE PURSUIT REPORTING SYSTEM
COMMON REPORTING ERRORS

Block 8  (JURIS NUMBER)


**DIRECTIVE 9.4 - 14**
**APPENDIX "A"**
Case ID: 220901284

This block must be completed. If you don't know this number, you can obtain it from the person in your department who submits Uniform Crime Report information to the Pennsylvania State Police, or call the number listed below.

Block 9 (REASON INITIATED)
Mark ONLY ONE selection. If two or more selections could be made, mark only the most serious. For example, if a violator is pursued for a speeding violation, and it is later determined that the vehicle is stolen, then OTHER TRAFFIC should be marked. If, before attempting to stop the speeder, the officer learns that the vehicle has been reported stolen, then STOLEN OR SUSPECTED should be marked. Selection should usually agree with non-pursuit-related charges in block 15.

Blocks 10(TYPE VEHICLE PURSUED), 11 (APPREHENSION), 12 (REASON TERMINATED)
    Mark only one selection in each block.

Block 13 (COLLISION TYPE)
    More than one selection may be marked.

Blocks 11(APPREHENSION), 39 (VIOLATOR)
If a violator is identified in Block 39, some type of apprehension should be indicated in Block 11.

Block 14 (APPREHENSION TECHNIQUES)
There may be more than one selection made under USED. No more than one selection may be made under END PURSUIT.

One selection under END PURSUIT must be marked, unless NONE-VIOLATOR SUCCESSFULLY ELUDED POLICE or NONE-DECISION MADE TO TERMINATE or DELAYED - AFTER TERMINATION OF PURSUIT are marked in block 11 (APPREHENSION).

Also, OTHER INDUCED STOP refers to one or more police vehicles being used to force the pursued vehicle to stop. It does not include TOTAL ROADBLOCK, ROLLING ROADBLOCK, and LEGAL INTERVENTION (in legal intervention, a police vehicle is deliberately driven into the pursued vehicle.

Block 15 (NONPURSUIT-RELATED CHARGES), 20 (PURSUIT-RELATED CHARGES)
    Listing charges:

|        | RIGHT   | WRONG   |
|--------|---------|---------|
|        | VC 1543 | 75 1543 |

Blocks 15, 19, 20 (NONPURSUIT AND PURSUIT-RELATED CHARGES)
If suspect was not apprehended, no charges should be indicated in Blocks 15, 19, or 20.

**DIRECTIVE 9.4 - 15**
**APPENDIX "A"**
Case ID: 220901284

Include charges previously filed if the violator is fleeing to avoid their capture or the capture of any occupant of the pursued vehicle and the charge for the offense marked in Block 9.

For example, a violator is the subject of an outstanding warrant for burglary and criminal trespass. During the pursuit, the violator attempts to ram a pursuing police vehicle. The violator is apprehended during the pursuit, cocaine is found in his vehicle. CC3502 (burglary), CC3503 (criminal trespass, and CS1316 (possession of a controlled substance) would be entered in Block 15 (NONPURSUIT-RELATED CHARGES), CC2702 (aggravated assault) would be entered in Block 19 (PURSUIT-RELATED CHARGES). (The example in the original instructions indicated the drug charges would be considered pursuit-related. This was incorrect.)

NEW FOR 1997 Also include charges exceptionally cleared. For example, if a suspect is killed in the course of the pursuit or other police action related to the pursuit, but otherwise would have been charged with fleeing and eluding, recklessly endangering another person, and aggravated assault, then these charges should be listed in the appropriate blocks.

Block 19, 20 (PURSUIT-RELATED CHARGES)
Charges listed in Block 15 may be listed here also, but only if they are the result of a different incident. For example, aggravated assault is listed in Block 15 because of an outstanding warrant, then the suspect, during the pursuit, rams a pursuing vehicle, resulting in another aggravated assault charge, which would then be listed in Block 20

Blocks 23 through 37
    Enter only whole numbers, in three-digit format

      001    RIGHT
      1.0    WRONG

Blocks 31 through 33 (PROPERTY DAMAGE)
    These amounts must be reported in multiples of $100.

    For example:    005    $500.00
                050    $5,000.00
                500    $50,000.00

---

**BY COMMAND OF THE POLICE COMMISSIONER**

---