IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

―――――――――――――――――――――――――
                                                    :
JOSHUA OTERO, as Administrator          :
of the Estate of Virgen Martinez,            :
Deceased                                           :
                                                    :
                                                    :      NO. 22-CV-4141
        v.                                        :
                                                    :
CITY OF PHILADELPHIA, et al.              :
                                                    :
―――――――――――――――――――――――――

**O P I N I O N**

SCOTT W. REID                                          DATE:  June 9, 2026
UNITED STATES MAGISTRATE JUDGE

        In this action, Joshua Otero, as Administrator for the estate of his mother, Virgen

Martinez, has sued the City of Philadelphia ("the City"), Tahir Ellison, and Police Officers

Christian Kane and Alexander Hernandez under 42 U.S.C. § 1983 and state law negligence

claims in connection with the death of Ms. Martinez in a car collision with Tahir Ellison, who

was fleeing from Officers Kane and Hernandez.

        In an opinion dated September 12, 2024, the undersigned granted Defendants' motion for

summary judgment as to his claim against the City for failure to supervise Officers Kane and

Hernandez, but denied the motion as to all other claims asserted.  Notably, among those claims

was one against the City based on *Monell v. Dep't of Social Services of the City of New York*,

436 U.S. 658 (1978), for failure to adequately train its police officers on pursuits.  By order of

January 29, 2026, this Court dismissed the §1983 claims against Officers Kane and Hernandez,

following an interlocutory decision of the Court of Appeals for the Third Circuit.  *ECF Doc. No.

64*; *Otero v. Kane*, 161 F.4th 189 (3d Cir. 2025).  However, the *Monell* claim was not dismissed.

        The City now moves for reconsideration of this Court's denial of summary judgment as

to Otero's *Monell* claim.  For the reasons set forth below, I will deny this motion.

I.        *Factual/Procedural Background*

In its September 12, 2024, decision, this Court decided that Otero could argue to a jury that the City failed to provide adequate training on the pursuit of suspects.  This Court acknowledged that such a claim could not be proved merely by calling for "more or better training" where an existing program is "adequate to enable officers to respond to usual and recurring situations."  ECF Doc. 46 at 24, *quoting City of Canton, Ohio v. Harris*, 489 U.S. 378, 391(1989).  However, Plaintiff had come forward with evidence that, based on data collected by the City itself, over half of all police pursuits were unjustified under the City's policies in every year from 2016 to 2020 (the last year considered), for an average of 58.7% unjustified pursuits. ECF Doc. 46 at 25.  Viewed in the light most favorable to Otero, this evidence could indicate that the police were not adequately trained on the City's policies on high-speed pursuits, and that the City was aware of this.  This was sufficient to support a claim under *Monell* that the City was deliberately indifferent to the rights of people with whom the police came into contact.

In this motion, however, the City maintains that the decision of the Court of Appeals for the Third Circuit in the interlocutory appeal rendered the *Monell* claim untenable.  The Court of Appeals for the Third Circuit determined that Officers Kane and Hernandez could not be found to have violated Ms. Martinez's constitutional rights under the 14th Amendment unless they acted with intent to harm.  161 F.4th at 194.  Since this standard was not met, neither officer committed a constitutional violation.  *Id*.  For that reason, the §1983 claims against the Officers were dismissed.  The City argues that, because the police officers did not violate Ms. Martinez's constitutional rights, it cannot be found to have violated her rights under *Monell*.  As explained below, however, I conclude that the decision of the Court of Appeals for the Third Circuit in *Fagan v. City of Vineland*, 22 F.3d 1283 (3d Cir. 1994) precludes such a result.

III.    *Relevant Legal Standards*

    A.    *Motions for Reconsideration*

The Federal Rules of Civil Procedure do not expressly authorize motions for

reconsideration.  *See Brightwell v. New Jersey Dep't of Child & Family & Office of Licensing*,

Civ. A. No. 22-3016, 2024 WL 1723306 at *2 (D.N.J. Mar. 12, 2024), *aff'd* 2025 WL 984603

(3d Cir. Apr. 2, 2025).  However, because the City's motion argues that relief is necessary based

on the new decision of the Court of Appeals for the Third Circuit, and is not brought for an

improper purpose such as asking this Court to rethink what it had already thought through, I

consider it an appropriate motion.  *See Pollock v. Energy Corp. of America*, 665 F. App'x 212,

218 (3d Cir. 2016).

    B.    *Monell and Failure to Train*

In *Monell*, the United States Supreme Court held that a municipality may be held liable

under §1983 when a municipal policy or custom caused the constitutional violation.  436 U.S.

658, 694-5 (1978).  A municipality cannot be sued under *Monell* for injury inflicted solely by its

employees or agents, under a *respondeat superior* theory.  *Id*. at 694.  However, "it is when

execution of a government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

government as an entity is responsible under §1983."  *Id*.

Further, the United States Supreme Court has ruled that the inadequacy of police training

may serve as the basis for a *Monell* claim if the failure to train amounted to deliberate

indifference to the rights of the people with whom the police come into contact:

> It may seem contrary to common sense to assert that a municipality will actually have a
> policy of not taking reasonable steps to train its employees.  But it may happen that in
> light of the duties assigned to specific officers or employees the need for more or
> different training is so obvious, and the inadequacy so likely to result in the violation of

constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 390 (1989).

   C.   *Fagan v. City of Vineland*

As mentioned above, the Court of Appeals for the Third Circuit decided in the interlocutory appeal in this case that Officers Kane and Hernandez could not be found to have violated Ms. Martinez's constitutional rights because they did not undertake a high-speed chase with the intent to harm. 161 F.4th at 194. The City argues that, absent an underlying unconstitutional action by the Officers, there can be no *Monell* claim. It points to *Los Angeles v. Heller*, 475 U.S. 796 (1986) (*per curiam*), where the United States Supreme Court wrote: "[I]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that departmental regulations might have authorized the use of constitutionally excessive force [which was the allegation in *Heller*] is quite beside the point." *Id*. at 798.

The decision of the Court of Appeals for the Third Circuit in *Fagan v. City of Vineland*, however, directly opposes the City's argument.[1] There, a car pursued by Vineland police officers ran a red light and crashed into a bystander's vehicle, causing three deaths and serious injuries to three surviving passengers. 22 F.3d at 1287. Plaintiffs (the surviving passengers, and the estates and survivors of the passengers who died) claimed under §1983 that the City of Vineland violated their right to substantive due process under the Fourteenth Amendment because it had a policy of failing to properly train its police officers on high-speed pursuits. *Id*.

The District Court granted summary judgment in favor of all defendants, including the City of Vineland. *Id*. It held that the actions of the defendant police officers were not

---

[1] *Fagan* is sometimes referred to as *Fagan I* to distinguish it from a second Third Circuit decision, decided the same day. 22 F.3d 1296 (3d Cir. 1994). The second *Fagan* decision is not at issue here, so I refer to the relevant decision merely as "*Fagan*".

unconstitutional, and therefore the City could not be liable because its alleged failure to train had not caused a violation of the plaintiffs' constitutional rights. *Id*. The Third Circuit Court of Appeals disagreed. It wrote:

> We hold that in a substantive due process case arising out of a police pursuit, an underlying constitutional tort can still exist even if no individual police officer violated the Constitution. ... The City is liable under section 1983 if its policymakers, acting with deliberate indifference, implemented a policy of inadequate training and thereby caused the officers to conduct the pursuit in an unsafe manner and deprive the plaintiffs of life or liberty.

22 F.3d at 1292.

> The *Fagan* court explained its holding:

> A finding of municipal liability does not depend automatically or necessarily on the liability of any police officer. ... If it can be shown that the plaintiff suffered [] injury, which amounts to deprivation of life or liberty, because the officer was following a city policy reflecting the city policymakers' deliberate indifference to constitutional rights, then the City is directly liable under section 1983 for causing a violation of the plaintiff's Fourteenth Amendment rights. The pursuing police officer is merely the causal conduit for the constitutional violation committed by the City.

*Id*.

> The *Fagan* court specifically distinguished *Heller*:

> [T]he Court characterized the liability of the City of Los Angeles and its Police Commission as one of *respondeat superior* by noting that '[t]hey were sued only because they were thought legally responsible for [the police officer]'s actions.' [475 U.S.] at 799, 106 S. Ct. at 1073. Thus, the Court did not address any independent section 1983 claims against the City of Los Angeles and its Police Commission. ...

> Unlike in *Heller*, the plaintiffs in this case brought separate, independent constitutional claims against the pursuing officers and the City.

*Id*. at 1291-2.

The City criticizes *Fagan* throughout its motion, but it concedes that *Fagan* has not been overruled and remains controlling law in the Third Circuit. *Motion for Reconsideration* at 7 ("...*Fagan I* is still good law in the Third Circuit in the context of pursuit cases...").

Indeed, as recently as January, 2026, the Honorable Gerald A. McHugh acknowledged that *Fagan* established an exception to the need for an "underlying constitutional violation" in a *Monell* claim "for substantive due process claims brought under the Fourteenth Amendment." *Nero v. Whitpain Township*, Civ. A. No. 24-5974, 2026 WL 1471010 at *4 and n. 7 (E.D. Pa. Jan. 2026). *Nero* itself did not concern a police chase, but an alleged use of excessive force. *Id.* at *1. However*, Donahue v. Borough of Collingdale*, 714 F. Supp.3d 504 (E.D. Pa. 2024), did involve a police pursuit. There, the Honorable Michael M. Baylson wrote: "the Third Circuit has confirmed that a municipality may be 'independently liable for a substantive due process violation' even when no officer is liable since *Fagan I*." 714 F. Supp.3d at 515.

In *Koreny v. Smith*, Civ. A. No. 17-371, 2018 WL 1141513 (W.D. Pa. Mar. 2, 2018), the District Court for the Western District of Pennsylvania dismissed a *Monell* claim in a police pursuit case where a plaintiff had not shown a plausible failure to train. However, it acknowledged: "Under *Fagan I* claims against the municipality may go forward for violation of substantive due process in a narrow set of cases involving police pursuit where no individual officer of the municipality violated the plaintiff's substantive due process rights." 2018 WL 1141513 at *21.

Similarly, the late Honorable Bruce W. Kauffman applied *Fagan* in a police pursuit case. *Thomas v. City of Philadelphia*, Civ. A. No. 01-2572, 2002 WL 32350019 (E.D. Pa. Feb. 7, 2002). He refused to dismiss a *Monell* claim, writing:

> The Third Circuit squarely addressed the issue of independent municipal liability in the context of high-speed police pursuits in *Fagan*, 22 F.3d at 1294 (holding that a municipality can be independently liable under §1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution.

*Id.* at *3.

6

IV.    *Discussion*

A.    *Fagan is Controlling Here*

This case is identical to *Fagan* in every pertinent way.  As set forth in *Fagan*'s holding, the significant factors are that (a) it was a claim of a violation by the municipality of the plaintiffs' due process rights under the 14th Amendment; (b) it arose out of a police pursuit; (c) no individual police officer was found to have violated the Constitution; and (d) the specific allegation was that the municipality's failure to train "caused the officers to conduct the pursuit in an unsafe manner and deprive the plaintiffs of life or liberty."  22 F.3d at 1292.  These factors are all present here.

The City counters that Otero's fact pattern is not identical to the fact pattern in *Fagan*, because (1) "the pursuit in *Fagan* was initiated for a minor code violation," while here, "the pursuit was aimed at apprehending a drug dealer"; and because (2) the claim in *Fagan* was that the City of Vineland had an inadequate policy on pursuits, while the claim here is that the City's policy may have been adequate, but that the police officers were not adequately trained on the policy.  *City's Reply* at 2.  While true, these differences are not sufficient to take this case out of *Fagan*'s ambit because they were not relevant to its holding.  The *Fagan* court did not base its decision on the nature of the offense which sparked the pursuit, or on the content of the municipal policy.  In fact, the City's description of the City of Vineland's policy is taken from the decision of the District Court; the Court of Appeals panel did not mention it at all.  *Id.*, *citing Fagan v. City of Vineland*, 804 F. Supp. 591, 595 (D.N.J. 1992).

Because Otero's *Monell* claim is so similar to that at issue in *Fagan*, it is not fatal to his claim that the Court of Appeals for the Third Circuit stated in *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120 (3d Cir. 2003) that it "closely confined *Fagan* to its facts:  a

7

substantive due process claim resulting from a police pursuit." *Id*. at 124 at n. 5. Otero's *Monell*

claim *is* a substantive due process claim resulting from a police pursuit.[2] In summary, it is not

realistically possible to distinguish *Fagan* from this case. *Fagan* is, as the City put it, "good law

in the Third Circuit" and it controls here.

        B.       *Both Fagan and Otero Recognize the Need for a Constitutional Injury*

The City argues that *Fagan* "does not provide [*sic* "explain"] how a municipality could

violate the constitution without its employees doing so." *Motion for Reconsideration* at 7.

Because *Fagan* is controlling Third Circuit precedent here, it is not clear that such an argument

could affect this Court's decision on the City's Motion for Reconsideration.

Nevertheless, I note that the City's statement is inaccurate. The *Fagan* court

acknowledged that a constitutional violation is needed to support a *Monell* claim, but specified

that – at least in the context of a police pursuit – the violation can be caused directly by the

municipality's policy even in the absence of unconstitutional behavior by the pursuing police

officers. As above, it wrote:

> If it can be shown that the plaintiff suffered [] injury, which amounts to **deprivation of life or liberty**, because the officer was following a city policy reflecting the city policymakers' deliberate indifference to constitutional rights, then the City is directly liable under section 1983 for causing **a violation of the plaintiff's Fourteenth Amendment rights**. The pursuing police officer is merely the causal conduit for **the constitutional violation committed by the City.**

22 F.3d at 1292. (Bold supplied).

---

[2] Interestingly, the City also notes that the *Fagan* reasoning has been applied post-*Grazier* by the Court of Appeals for the Third Circuit at least once in a case which did not pertain to a police chase. *Motion for Reconsideration* at 4, *citing Mervilus v. Union Cty.*, 73 F.4th 185, 196-7 (3d Cir. 2023) ("[A] municipality can be held liable under *Monell* even when its officers are not, unless such a finding would create an *inconsistent* verdict" (emphasis in original), and later citing *Fagan* for its statement that "It is easy to imagine a situation where an improperly trained police officer may be ignorant of the danger created by his actions and inflicts injury").

Further, the *Fagan* court explained its reasoning:

If we conditioned municipal liability on an individual police officer's liability in every case, it might lead to illogical results. A municipality would escape liability whenever the conduct of the acting police officer did not meet the "shocks the conscience" standard, even though municipal policymakers acting with deliberate indifference or even malice, implemented a policy which dictated his injury-causing actions. It is easy to imagine a situation where an improperly trained police officer may be ignorant of the danger created by his actions and inflicts injury. Meanwhile, the city's policymakers, with a wealth of information available to them, are fully aware of those dangers but deliberately refuse to require proper training. The officer may escape liability because his conduct did not "shock the conscience." It does not follow, however, that the city should also escape liability. The city caused the officer to deprive the plaintiff of his liberty; **the city therefore has violated the plaintiff's Fourteenth Amendment rights.**

*Id.* (Bold supplied).

Here, Otero does not avoid identifying the constitutional injury necessary to support his *Monell* claim. He explains that "[t]he constitutional violation was committed by the City due to its deliberate indifference to the inadequate pursuit training which caused Officers Kane and Hernandez to initiate an improper pursuit resulting in the deprivation of Ms. Martinez's Fourth Amendment rights to life and liberty." *Response* at 8.

The City quotes *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 n. 13 (3d Cir. 1995), where the Court of Appeals remarked in dicta that the *Fagan* panel failed to establish an underlying constitutional violation. However, this observation, made in a footnote addressing the standard of culpability in a *Monell* claim, was not accompanied by any discussion of the language quoted above from *Fagan*. In any event, *Mark* did not concern a police pursuit, so *Fagan* was not relevant to that case, by the terms of *Fagan*'s own holding. 22 F.3d at 1292 ("We hold that in a substantive due process case **arising out of a police pursuit**, an underlying constitutional tort can still exist even if no individual police officer violated the Constitution") (Bold supplied).

9

Thus, although it is possible to disagree in principle with the *Fagan* holding that the necessary constitutional injury can be that committed by the municipality even in the absence of constitutional injury by the police officers, it is not accurate to say that the issue was unexplained in *Fagan*.

As both the *Fagan* court and Otero acknowledge the need for a constitutional injury, the numerous cases cited by the City emphasizing that point do not affect this Court's analysis of the City's motion.  *Motion for Reconsideration* at 4-5.

In any event, none of the cases cited by the City regarding the need for a constitutional injury involve a police pursuit.  Therefore, like *Mark*, they are outside of the explicit language of the *Fagan* holding.  *Hightower v. City of Philadelphia*, 130 F.4th 352 (3d Cir. 2025) (plaintiff alleging violation by prison guards in connection with his placement with a violent cellmate); *Vargas v. City of Philadelphia*, 783 F.3d 962, 975 (3d Cir. 2015) (alleging failure to train police officers who prevented plaintiff from obtaining medical care for her daughter); *Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006) (state-created danger allegation against school district in connection with the suicide of a student); *Brown v. Cwlth of Pa. Dep't of Health Emergency Medical Svc's Training Inst.*, 318 F.3d 473 (3d Cir. 2003) (suit alleging failure to train emergency workers, following death of an infant); *Kneipp v. Tedder*, 95 F.3d 199 (3d Cir. 1996) (failure to train police in connection with harm to an intoxicated person); *Hammon v. Kennett Township*, 746 Fed. App'x. 146 (3d Cir. 2018) (state-created danger allegation based on injury from a police officer who suffered a seizure while driving); *H.U. v. Northampton Area School District*, 2021 WL 4810170 (3d Cir. 2021) (non-precedential) (failure to train School District bus driver and chaperone in connection with a sexual assault upon a student in a school bus).

More relevantly, the City cites *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). *Lewis*, decided by the United States Supreme Court four years after the Third Circuit's *Fagan* decision, which includes language that seems to assume that constitutional harm must be committed by an employee in a *Monell* claim for failure to train:

> We have employed deliberate indifference as a standard of culpability sufficient to identify a dereliction as reflective of municipal policy and to sustain a claim of municipal liability for failure to train an employee who causes harm by unconstitutional conduct for which he would be individually liable.

*County of Sacramento v. Lewis*, 523 U.S. 833, 850 at n.10 (1998).  Here, however, although the City calls this an "unequivocal pronouncement on this issue," it also concedes that this text, located in a footnote, is dicta.  *Motion for Reconsideration* at 2.

In fact, *Lewis* did not decide a *Monell* claim.  The *Lewis* court explained in another footnote that the District Court in *Lewis* dismissed a *Monell* claim "after finding no genuine factual dispute as to whether the county adequately trains its officers in the conduct of vehicular pursuits or whether the pursuit policy of the Sheriff's Department evinces deliberate indifference to the constitutional rights of the public."  *Id*. at 838 at n. 2.  This was not, however, the subject of the *Lewis* appeal.  Therefore, it is unlikely that the *Lewis* court intended to make an "unequivocal pronouncement" on the nature of *Monell* claims.

In other words, it is indisputable that a *Monell* claim can be one of "[municipal] liability for failure to train an employee who causes harm by unconstitutional conduct for which he would be individually liable," as the *Lewis* court put it.  However, it is not as clear that *Lewis* precludes a *Monell* failure to train case where the unconstitutional conduct was that of the municipality.

11

Thus, there is no case which overturns *Fagan*, and there is no case which definitively precludes its continued vitality as precedential in the Third Circuit Court of Appeals. Under these circumstances, this Court cannot ignore *Fagan*.

B.      *The Deliberate Indifference Standard Applies Here*

The United States Supreme Court has found that the inadequacy of police training can serve as the basis for a *Monell* claim where the failure to train amounts to deliberate indifference to the rights of the people with whom the police come into contact. *City of Canton v. Harris*, *supra*, at 489 U.S. 388. Thus, in *Fagan*, the Court of Appeals for the Third Circuit specifically held that "[t]he City is liable under section 1983 if its policymakers, acting with **deliberate indifference**, implemented a policy of inadequate training and thereby caused the officers to conduct the pursuit in an unsafe manner and deprive the plaintiffs of life or liberty." 22 F.3d at 1292. (Bold supplied).

> Two years, later, the Court of Appeals for the Third Circuit wrote in *Kneipp v. Tedder*:
>
> As we noted in *Mark*, some inconsistency exists in this circuit as to the standard of care to be applied to the underlying constitutional violation in policy, custom or practice cases. 51 F.3d at 1153 n. 13. In *Fagan II*, we interpreted *Collins* to hold that the appropriate test in all substantive due process cases is whether the defendant's actions shock the conscience. *Id*. (citing *Fagan II, supra*). In articulating the standard of care for municipal liability, however, we explained that **the shocks the conscience standard applied to determine the liability of the pursuing police officers under section 1983, while a deliberate indifference standard applied to determine the municipality's liability**. *Id*. (quoting *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994) (*Fagan I*)). Although *City of Canton* predated our opinions in *Fagan I and II* and the Supreme Court's decision in *Collins*, we continue to recognize the application of the deliberate indifference standard to ascertain municipality liability as the constitutional standard in failure to train police officers cases. *See, e.g., Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996).

95 F.3d at 1212. (Bold supplied).

Despite this clear guidance, the City argues that the same "intent to harm" standard which applied to Officers Kane and Hernandez applies to the *Monell* claim. *Request for Reconsideration* at 7. It cites *Koreny*, *supra*, where the District Court for the Western District of Pennsylvania interpreted *Lewis* as requiring that, "if the intent to harm is not found with respect to the individual officer and his conduct, the intent to harm, then, must be found with respect to the municipality in order for Koreny to state her claim." 2018 WL 1141513 at *21.

As between the interpretation of *Lewis* set forth by the District Court for the Western District of Pennsylvania in *Koreny*, however, and the specific discussion of *Lewis* by the Court of Appeals for the Third Circuit in *Fagan* – and by extension, the reasoning of the Court of Appeals for the Third Circuit in *Kneipp* – this Court is obviously bound by the latter two decisions.[3] Therefore, although I agree with the City that Otero has not come forward with evidence of an intent to harm by the City, I will not dismiss Otero's *Monell* claim on that basis.

C.    *Fagan Remains Controlling Law Despite Criticism*

The City is accurate in pointing out that the *Fagan* holding is not widely accepted. The effect of *Lewis* upon *Fagan* is unclear. Further, many circuits have explicitly decided that unconstitutional acts by the individual officers are necessary to support a *Monell* claim, specifically in a police pursuit case. *See Evans v. Avery*, 100 F.3d 1033, 1039 (1st Cir. 1996) (explicitly rejecting *Fagan*); *Temkin v. Frederick County Commissioners*, 945 F.2d 716, 724 (4th Cir. 1991); *Meals v. City of Memphis, Tenn.*, 493 F.3d 720, 731 (6th Cir. 2007); *Flynn v. Consolidated City of Indianapolis & Marion County*, 148 F.4th 565, 570 (7th Cir. 2025); *Sitzes*

---

[3] This Court also takes note of Otero's argument that the extremely high "intent to harm" standard has been found appropriate in police pursuit cases because of the hyperpressurized environment in which police officers must make split-second decisions as to whether to pursue. *Response* at 19, *citing Otero v Kane*, 161 F.4th at 193 *and Sauers v. Nesquehoning*, 905 F.3d 711, 717 (3d 2018). Otero suggests that this reasoning can hardly apply to municipal policymaking. *Id.*

*v. City of W. Memphis Ark.*, 606 F.3d 461, 470-1 (8th Cir. 2010); *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155 (10th Cir. 2001).

In *Mark*, discussed above, even the Third Circuit criticized the reasoning in *Fagan*. 51 F.3d at 1153 n. 13. Nevertheless, as Judge Baylson pointed out in *Donahue*, "grumblings are not grounds for reversal." 714 F. Supp.3d at 515-6. (Or, to be more precise, grumblings, standing alone, do not constitute reversal). Thus, despite *Mark*, and despite disagreement in other Circuits, Judge Baylson concluded that *Fagan* was good law, and he followed it. *Id.*, *citing Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006); *Brown v. Cwlth of Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2008) (citing *Fagan* with approval); *and Mervilus*, *supra*. This Court is compelled to do the same here.

Judge Kauffman reached a similar conclusion in *Thomas*, *supra*. In denying the City's motion, I can do no better than to cite his observation:

> Other circuit courts have explicitly disagreed with the decision in *Fagan* regarding independent municipal liability, and some Third Circuit case law subsequent to *Fagan* appears to cast doubt upon its analysis. Until the Court of Appeals decides to the contrary, however, the Court must follow the law in this circuit as laid out in *Fagan*.

2002 WL 32350019 at *4.

V.     *Conclusion*

For the reasons set forth above, the City's Motion for Reconsideration will be denied by a separate order of even date.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE

14